THE PEOPLE *ex rel.* THE VILLAGE OF GRAYSLAKE, Plaintiff and Counterdefendant-Appellant, v. THE VILLAGE OF ROUND LAKE BEACH, Defendant and Counterplaintiff-Appellee.

Second District   No. 2—92—0368

Opinion filed March 5, 1993.

John C. Baumgartner and William S. Churchill, both of Churchill, Baumgartner & Phillips, Ltd., of Grayslake, for appellant.

John M. Mullen, of Libertyville, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff and counterdefendant, the Village of Grayslake, appeals from the orders of summary judgment in favor of the defendant and counterplaintiff, the Village of Round Lake Beach. The central issue on appeal is whether Grayslake's voluntary annexation of the land in question had priority over Round Lake Beach's involuntary annexation of the same property. We focus on the sufficiency of the annexation petitions filed by the landowners in question (the petitioners) with Grayslake.

After it completed its proceedings to annex the property at issue here, Grayslake initiated this action in *quo warranto* (Ill. Rev. Stat. 1991, ch. 110, par. 18—101 *et seq.*). It sought a declaration that its annexation had priority and that Round Lake Beach's annexation of the same property was null and void. Round Lake Beach filed a counterclaim in *quo warranto* to declare its annexation valid. The annexations concerned two property parcels known as the Olson property and the Francke property.

The underlying facts in this case are not in dispute. Only their legal consequence is at issue. Grayslake proceeded with a voluntary annexation petition under section 7—1—8 of the Illinois Municipal Code (the Code) (Ill. Rev. Stat. 1989, ch. 24, par. 7—1—8). The voluntary proceedings, which led to Grayslake's enactment of annexation ordinances, were formally initiated when the petitioners, landowners and electors associated with the Francke and Olson properties, filed annexation petitions with Grayslake. (*People ex rel. Village of Northbrook v. Village of Glenview* (1989), 194 Ill. App. 3d 560, 566.) The Francke petition was filed on October 8, 1990. The Olson petition was filed on October 15.

Round Lake Beach undertook to annex the property in involuntary proceedings under section 7—1—13 of the Code (Ill. Rev. Stat.

1989, ch. 24, par. 7—1—13). It published the requisite preannexation notices and formally initiated the involuntary annexation when it passed its ordinances annexing the Francke property on October 9, 1990, and the Olson property on October 16. See *Village of Mundelein v. Village of Long Grove* (1991), 219 Ill. App. 3d 853, 859.

In its *quo warranto* complaint, to support its claim of annexation priority, Grayslake relied on the fact that the petitioners had filed their annexation petitions with Grayslake before Round Lake Beach passed its annexation ordinances. (See *Village of Mundelein v. Village of Long Grove* (1991), 219 Ill. App. 3d 853, 859.) On December 2, 1991, Round Lake Beach filed a motion for summary judgment in the *quo warranto* cause. In that motion, it argued that Grayslake did not gain annexation priority through the landowners' petitions for annexation. According to the motion, the petitions were void and could not confer priority because the signators had not signed under oath so that the petitions failed to comply with the requirements of section 7—1—8 of the Code.

Adjacent to each of the 10 signatures on the Francke petition is the jurat "Subscribed and sworn to before me the *7th* day of October, 1990," with the signature and seal of Doris D. Manson, a notary public. Adjacent to each of the four signatures on the Olson petition was the jurat "Subscribed and sworn to before me this *15th* day of October, 1990," with the signature of Kathleen J. Flynn. At the bottom of the page is the seal of Flynn, a notary public.

Round Lake Beach deposed the petitioners, who attested that they signed the petitions at home and out of the presence of the notary; several deponents did not even know the notary. The petitioners stated that they were pursuing an annexation agreement with Grayslake when Round Lake Beach served them with notice of its annexation. After they received Round Lake Beach's notice, they signed their petitions for annexation to Grayslake and gave them to their attorney, intending that the petitions be filed with Grayslake before Round Lake Beach enacted annexation ordinances.

In response to Round Lake Beach's motion for summary judgment, Grayslake submitted the petitioners' affidavits that although they signed the petitions at home and out of the presence of a notary, they believed that they were signing the petitions under oath and attesting to their accuracy. Each was aware that his signature would be notarized and believed that he was both obligated to be truthful and subject to charges of perjury.

The trial court granted Round Lake Beach's motion for summary judgment against Grayslake's claim for annexation. The trial court

also granted summary judgment to Round Lake Beach on its counterclaim and approved Round Lake Beach's annexation of both parcels. Grayslake brought this appeal. It argues, basically, that the petitioners' petitions for annexation to Grayslake were valid to give priority to Grayslake's annexation of the property.

■ The legislature alone has the authority to allow or require the alteration of municipal boundaries by annexation. (*In re Petition to Annex Certain Territory* (1991), 144 Ill. 2d 353, 361-62.) The court's function is to determine whether the petitioners for annexation have complied with the procedures established by the legislature. (144 Ill. 2d at 361.) A petition for annexation must strictly comply with statutory requirements. (144 Ill. 2d at 361-62.) In ruling upon a petition for annexation, the court lacks any discretion to determine what constitutes a sufficient petition for annexation; rather, the court decides only the sufficiency of the petition in accordance with the statutory requirements and addresses the questions relating to the execution of the statute. 144 Ill. 2d at 361.

■ Section 7—1—8 of the Code, the statute which Round Lake Beach claims was not complied with here, provides:

> "Any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality at the time of annexation and which territory has *** electors residing therein, may be annexed to the municipality in the following manner: a written petition signed by the owners of record of all land within such territory and by at least 51% of the electors residing therein shall be filed with the municipal clerk. The petition shall request annexation and shall state that *** at least 51% of such electors residing therein join the petition *** and *shall be under oath.*" (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 24, par. 7—1—8.)

Because of the nature of our analysis, we need not discuss Round Lake Beach's argument that the petitions here did not satisfy the "under oath" requirement of section 7—1—8. Rather, we proceed with analysis of whether the petitions, despite presumed statutory insufficiency, were sufficient to create annexation priority. That analysis focuses on whether the "under oath" requirement was directory, as Grayslake argues, or mandatory, as Round Lake Beach argues.

Round Lake Beach contends initially that Grayslake waived any argument that the "under oath" requirement is directory rather than mandatory, for failure to raise it in the trial court. We note that in the trial court Grayslake both argued that it substantially complied with section 7—1—8 and cited case law that discusses directory rules. We

do not find waiver. See also *Welch v. Johnson* (1992), 147 Ill. 2d 40, 48.

In its argument, Grayslake contends that the deficiencies in the procedure followed to acquire the petitioners' signatures did not make the petitions invalid. It also contends that the court should consider the wishes of the petitioners, all of whom requested annexation to Grayslake instead of Round Lake Beach. No question is raised regarding the general qualification of each village to annex the land, because the parcels are contiguous to both villages. There is no evidence implying that the signatures are unauthorized or forged. Grayslake contends that justice and the purpose of the statutes would not be served if the parcels were to be annexed against the wishes of the residents who attempted in good faith to comply with the statute.

Grayslake notes that the policies underlying sections 7—1—8 and 7—1—13 support the petitioners. In that regard, it cites to *Northbrook v. Glenview*, wherein the court observed:

"We note generally that annexation statutes are usually construed liberally in favor of the public. (2 E. McQuillin, Municipal Corporations §7.14, at 422 (3d ed. 1988).) Moreover, compulsory incorporation is not favored, and therefore the question of annexation is usually referred to the inhabitants. (See 1 E. McQuillin, Municipal Corporations §3.16, at 288-89 (3d ed. 1987).) There is strong public policy that the land owners [*sic*] of the property to be annexed have the ultimate decision." *People ex rel. Village of Northbrook v. Village of Glenview* (1989), 194 Ill. App. 3d 560, 565-66.

Additionally, Grayslake points to the decision in *People ex rel. City of Leland Grove v. City of Springfield* (1988), 166 Ill. App. 3d 943 (*Leland Grove I*). In *Leland Grove I*, the court observed the statutory requirement that an involuntary annexation ordinance be preceded by 10 days' notice (Ill. Rev. Stat. 1989, ch. 24, par. 7—1—13) and that this notice requirement is intended to protect the property owner by giving him time to file a voluntary petition with another contiguous municipality. (*Leland Grove*, 166 Ill. App. 3d at 948.) The *Leland Grove I* court concluded that fundamental fairness dictates that the property owner must be allowed to choose among the several municipalities vested with annexation jurisdiction. 166 Ill. App. 3d at 948.

Grayslake also argues that the technicalities of annexation statutes have often been overlooked in the interests of justice. With reference to several case law examples, it contends that the statutory language at issue here was directory rather than mandatory and that the

petitioners' failure to comply strictly with the oath provision of section 7—1—8 was not fatal to the petitions.

In *Northbrook v. Glenview*, Glenview served the Northbrook trustees with personal delivery rather than with certified mail as specified by the statute. The court held that the purpose of the statute was satisfied. (*Northbrook*, 194 Ill. App. 3d at 564.) In addition, the affidavit of the Glenview village clerk on the annexation notice was not notarized prior to its recordation. The court held that since the village clerk had the power to administer oaths and was making an official act, the requirements of the statute were sufficiently met despite the absence of a notarization. 194 Ill. App. 3d at 564.

In *People ex rel. City of Leland Grove v. City of Springfield* (1990), 193 Ill. App. 3d 1022 (*Leland Grove II*), Leland Grove argued that the petition was not sworn under oath because the elector did not raise his right hand and swear to the statement as provided in section 3 of the Oaths and Affirmations Act (Ill. Rev. Stat. 1989, ch. 101, par. 3). (193 Ill. App. 3d at 1037.) The court held that because the elector had glanced at the petition, which included a statement that the signer had read the petition for annexation and that it was true, the elector understood that he was signing under oath. 193 Ill. App. 3d at 1038.

Similarly, in *In re Petition for Removal of Rice* (1962), 35 Ill. App. 2d 79, the court held that the petitions there would not be rejected based on the notary's failure to administer an oath to the affiants. It noted that the evidence showed that in the case of every signature there, the affiant approached the notary and asked for official action, to "notarize" his signature. (35 Ill. App. 2d at 91.) It also noted that in every case the notary asked the affiant to sign the affidavit and that when asked, the affiant affirmed the truth of the affidavit's contents. (35 Ill. App. 3d at 91.) In accepting the petitions there, the court adopted a rule which did not adhere to the strict statutory language in question, but which preserved a requirement which included a conscious calling upon an individual to subscribe to the truth; the court called its rule "more realistic and fair." 35 Ill. App. 2d at 91; see also *In re Annexation of Certain Territory to the Village of North Barrington* (1972), 8 Ill. App. 3d 50, 51 (the petitioners signed the document intending to sign it under oath).

Round Lake Beach notes that individual statutory annexation requirements have been held mandatory. It cites *People ex rel. County of St. Clair v. City of Belleville* (1981), 84 Ill. 2d 1. There, the city failed to give the statutory notice to the fire protection district trustees serving the territory in question. The supreme court held that the

city had failed to comply with a mandatory requirement in that regard, even though the majority of the trustees were served. Considering that failure and the insufficient content of the notice, the supreme court found that the city's annexation ordinances were rendered ineffective. (84 Ill. 2d at 8.) The *St. Clair County* court also found that the annexation map presented by the city included inexcusable inaccuracies. 84 Ill. 2d at 9-10.

■ To determine whether a statute is mandatory or discretionary, courts look first to the language of the statute as the best indication of legislative intent. (See *Pullen v. Mulligan* (1990), 138 Ill. 2d 21, 65.) If a statute imposes duties and by express language provides that the omission to perform the duties renders the proceeding void, then courts are bound to construe those provisions as mandatory; in most cases, however, the statute simply provides that certain acts shall be done within a particular time or in a particular manner and does not declare that their performance is essential to the validity of the proceeding; in these cases, the statute is directory. See *Pullen v. Mulligan* (1990), 138 Ill. 2d 21, 65; see also *In re Petition of Voters* (1992), 234 Ill. App. 3d 294, 297-98.

■ We find that the failings in *St. Clair County* are distinguishable from the one at issue in this case. Actual notice is directly related to due process. (See *St. Clair County*, 84 Ill. 2d at 8.) Further, a sufficiently accurate annexation map is necessary to avoid ambiguity and give notice both to affected property owners and to the public. (See 84 Ill. 2d at 10.) In contrast, this failing does not raise due process considerations; there is no claim of inadequate notice or ambiguity of intentions . We find that the oath requirement at issue here is designed to secure reliability, order, system, and dispatch in annexation proceedings and that those considerations were satisfied by the Olson and Francke petitions.

The taking of an oath by a notary is a ministerial act. (*Cheng v. Illinois* (N.D. Ill. 1977), 438 F. Supp. 917, 918.) There are no countervailing considerations here which would militate against giving the petitioners their choice of annexation. See, *e.g.*, *In re Petition of Voters* (1992), 234 Ill. App. 3d 294, 298 (failure to comply would create extra expenses).

The petitioners here assured that although they signed the petitions at home and out of the presence of a notary, they believed that they were signing the petitions under oath and attesting to their accuracy. Each was aware that his signature would be notarized and believed that he was both obligated to be truthful and subject to charges of perjury. We also note that owners of the Francke and Olson parcels

notified Round Lake Beach of their petitions to annex with Grayslake prior to Round Lake Beach's enactment of its annexation ordinances. We conclude that holding the oath requirement to be mandatory in these circumstances would exalt form over substance and frustrate the statutory purpose of allowing the petitioners their choice of annexation.

Grayslake also contends that the trial court should not have granted Round Lake Beach's motion for summary judgment. Its first objection is that Round Lake Beach's ordinance to annex the Olson property included a portion of the Wisconsin Central Limited Railway tracks, which bordered the parcel although Round Lake Beach's published annexation notice omitted the tracks. Grayslake contends that the annexation ordinance consequently was invalid for failure to comply with the requirements of section 7—1—13. (See *People ex rel. Village of Buffalo Grove v. Village of Long Grove* (1990), 199 Ill. App. 3d 395, 408 (*Long Grove II*).) Additionally, Grayslake objects that there was a remaining material issue of fact because Round Lake Beach did not submit a plat showing that the land in the ordinance matched that of the publication. See *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; *Long Grove II*, 199 Ill. App. 3d at 404.

Since we have already determined that the trial court erred when it determined that the Grayslake annexation did not have priority, these issues regarding the effectiveness of Round Lake Beach's attempt to annex the properties are moot.

■ Based on the foregoing, we find that the oath requirement of section 7—1—8 is directory, that the petitioners substantially complied with it, that their petitions were not invalid, and that those petitions, because they were filed prior to the passage of the Round Lake Beach ordinances, gave the Grayslake annexation priority over the Round Lake Beach annexation. Based on those findings, we reverse the summary judgment entered by the trial court in favor of Round Lake Beach.

For the above reasons, the judgment of the circuit court is reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Reversed in part and remanded.

WOODWARD and QUETSCH, JJ., concur.