**Nicolette Anne BUTLER, Plaintiff,**

v.

**ENCYCLOPAEDIA BRITANNICA, INC., etc., The Equitable Life Assurance Society of the United States, and Anthony J. Contini, Defendants.**

No. 92 C 7397.

United States District Court, N.D. Illinois, E.D.

Jan. 11, 1994.

John J. Casey, Hamblet, Casey, Oremus & Vacin, Chicago, IL, for plaintiff.

Joan Edmonds Brophy, Mayer, Brown & Platt, Chicago, IL, Thomas Wilson Waters, Kemp & Capanna, Ltd., Oak Brook, IL, George N. Vurdelja, Jr., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

This case centers around a dispute between Nicolette Butler ("Butler") and Anthony Cotini ("Cotini"), respectively the daughter and husband of Celia Cotini ("Celia"), over who is entitled to benefits payable by the Encyclopaedia Britannica Pension Plan (the "Pension Plan") and Encyclopaedia Britannica Savings Plan (the "Savings Plan") following the death of Celia in August 1992. Encyclopaedia Britannica, Inc. ("Britannica") is the Plan Administrator for both plans.[1] Both plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Presently pending are various cross motions for summary judgment.[2] Except as indicated below, the facts are not in dispute.

At the time of her death, Celia was 65 years old and an employee of Britannica. She was employed by Britannica for 37 years. Two benefits were payable upon Celia's death, pension benefits titled a "spouse's death benefit" in the Pension Plan and savings benefits payable by the Savings Plan. The pension benefits were fully funded by Britannica while Celia made contributions to the Savings Plan. Celia had filed designa-

---

1. The original complaint was by plaintiff Butler against defendants Britannica and Cotini and concerned the Pension Plan benefits ("pension benefits"). Cotini subsequently filed a counter-claim against Butler and a cross-claim against Britannica concerning the Savings Plan benefits ("savings benefits").

2. Butler moves for summary judgment on the complaint while Britannica and Cotini move for summary judgment dismissing the complaint. Butler and Britannica move for summary judgment dismissing Cotini's claims and Cotini moves for summary judgment on his claim against Butler. Cotini contends that a factual dispute exists that requires the trial of his claim against Britannica. Although the parties were directed to seek to avoid piecemeal briefing, they filed 15 separate briefs on the motions for summary judgment. This was inefficient for both the parties and the court.

tion forms with both plans designating Butler as the beneficiary of pension benefits and savings benefits. Both forms were dated August 27, 1990 and were signed by Cotini.

The pension benefits designation form provides in part:

● Complete Section 2 to designate your beneficiaries under the Encyclopaedia Britannica Pension Plan

\* \* \* \* \* \*

**Section 2—Pension Plan Beneficiary Designations**

● If you are married to an eligible spouse (as defined by the plan), your spouse is your primary Pension Plan beneficiary automatically.

● If you are not married (or if you are married but not to an eligible spouse, as defined by the plan) you may designate any person as your primary Pension Plan beneficiary. However, if you are married and designate a primary Pension Plan beneficiary other than your spouse, your spouse must provide his/her written consent by completing Section 3 below. Your spouse must then sign and date this form in the space provided and your spouse's signature must be witnessed by a notary public.

**Primary Savings Plan Beneficiary:** I designate the following person as my primary beneficiary to receive—in the event of my death—any amounts payable to my beneficiary under the terms and provisions of the Encyclopaedia Britannica Pension Plan.

\* \* \* \* \* \*

**Section 3—Spouse's Waiver of Primary Beneficiary Designation**

I _____, spouse of _____, hereby consent to the primary beneficiary designation made in Section 2 by my spouse, a participant in the Encyclopaedia Britannica Pension Plan. The designation provides that any amounts payable to my spouse under the terms and provisions of the Encyclopaedia Britannica Pension Plan will be paid—in the event of my spouse's death— to the designated primary beneficiary. I understand that the effect of this designation is to cause my spouse's account bal-

ance to be paid to someone other than myself, that this beneficiary designation is not valid unless I consent to it and that my consent is irrevocable unless my spouse revokes this beneficiary designation.

_____
Spouse's Signature

_____
Date

On this ____ day of _____, 19__, before me personally came _____ to me known to be the individual described above and who executed the same as his/her free and voluntary act for the uses and purposes stated herein.

_____
Notary Public's Signature

_____
Date Commission Expires

The savings benefits designation form is similar. It provides in part:

● Complete Section 2 to designate your beneficiaries under the Encyclopaedia Britannica Savings Plan

\* \* \* \* \* \*

**Section 2—Savings Plan Beneficiary Designations**

You can name anyone you want as your primary and contingent Savings Plan beneficiaries. However, if you are married and designate a primary Savings Plan beneficiary other than your spouse, your spouse must provide his/her written consent by completing Section 3 below. Your spouse must then sign and date this form in the space provided and your spouse's signature must be witnessed by a notary public.

**Primary Savings Plan Beneficiary:** I designate the following person as my primary beneficiary to receive—in the event of my death—any amounts payable to my beneficiary under the terms and provisions of the Encyclopaedia Britannica Savings Plan.

\* \* \* \* \* \*

**Section 3—Spouse's Waiver of Primary Beneficiary Designation**

I _____, spouse of _____, hereby consent to the primary beneficiary designation made in Section 2 by my spouse, a participant in the Encyclopaedia Britannica Savings Plan. The designation provides that any amounts payable to my spouse under the terms and provisions of the Encyclopaedia Britannica Savings Plan will be paid—in the event of my spouse's death—to the designated primary beneficiary. I understand that the effect of this designation is to cause my spouse's account balance to be paid to someone other than myself, that this beneficiary designation is not valid unless I consent to it and that my consent is irrevocable unless my spouse revokes this beneficiary designation.

_____
Spouse's Signature

_____
Date

On this ___ day of _____, 19__, before me personally came _____ to me known to be the individual described above and who executed the same as his/her free and voluntary act for the uses and purposes stated herein.

_____
Notary Public's Signature

_____
Date Commission Expires

Celia completed a designation form for each Plan. Both forms are dated August 27, 1990 and both forms designate Butler as the primary beneficiary and Butler's children as the contingent beneficiaries. The forms are signed by both Celia and Cotini. The notary portion of each form is filled in and signed and notarized by Louise Joslyn, an employee of Britannica. Cotini admits that his signature on each form is authentic. He, however, denies that he read the forms when he signed them and also denies that the forms were signed in the presence of the notary public. Joslyn does not specifically recall meeting Cotini and testified that she sometimes notarized documents without the signing party being present. Cotini contends that the uncontested facts show that he did not sign the forms in the notary's presence. Butler contends that a notarization is presumed to be correct and that the uncontested facts are that Cotini has failed to rebut the presumption that each form was signed in the presence of the notary.[3]

A notary public's certification of acknowledgement is presumed correct. *See* 1 Am.Jur.2d *Acknowledgements* §§ 92, 94, 98 (1962). That presumption can be overcome, however, including by evidence that the signing party was not present before the notary. *See id.* §§ 94, 98. For purposes of the summary judgment motion, a factual dispute exists as to whether Cotini signed the pension benefits designation in the notary public's presence. That dispute, however, is held to be immaterial to the resolution of the summary judgment motions.

Britannica determined that the designation form is not applicable to a spouse's death benefit and therefore determined that Cotini is entitled to the pension benefits. However, as a result of Butler's filing of this lawsuit, Britannica has refrained from distributing the pension benefits until the lawsuit is resolved. Britannica and Cotini argue, based on language in Article X of the Pension Plan, that the spouse's death benefit can only be paid to a spouse, cannot be designated for payment to another person, and a spouse cannot give a waiver. Alternatively, Cotini argues that the designation is invalid because he did not sign it in the presence of the notary public. It is Butler's position that ERISA and the Pension Plan both require that a participant be entitled to designate a beneficiary other than the participant's spouse. Butler also argues that the pension benefits designation is valid.

As to the savings benefits, it is Britannica's position that Cotini failed to timely contest the validity of the designation form. Britannica released the savings benefits to Butler after the filing of this lawsuit, but before Cotini had filed his counterclaim and cross-claim raising the savings benefits dispute. Britannica contends that, prior to filing his claims, Cotini raised no dispute as to the

---

3. Britannica joins in this argument as regards the savings benefits designation form. Britannica does not address this issue as regards the pension benefits designation form.

savings benefits and therefore has no claim against Britannica for the benefits which Britannica has already paid to Butler. Alternatively, Britannica contends that the designation is facially valid and that it was not required to look beyond the face of the designation. Britannica also takes the position that the designation form is valid even if it must be considered that Cotini signed it outside the presence of the notary public.

Butler contends that the savings benefits designation is valid or, alternatively, that any claim of Cotini must be against Britannica. The parties agree that the savings benefits could be designated to be paid to someone other than Celia's spouse, but it is also Cotini's position that Celia's designation is invalid because Cotini did not sign it in the notary public's presence.

As to Butler, Cotini contends there is a constructive trust and that this court may exercise its equitable powers under ERISA to require Butler to return the distributed benefits to the Savings Plan. As to Britannica, Cotini contends that, prior to the disbursement of the savings benefits, he informed a Britannica employee of his contentions and therefore Britannica breached its fiduciary duties when it distributed the benefits prior to investigating the validity of the designation. Cotini contends that a factual dispute exists as to whether Britannica acted properly in paying the funds to Butler. To the extent any such factual dispute exists, it is held to be an immaterial factual dispute.

ERISA includes the following provisions, which were added by the Retirement Equity Act of 1984 to protect the rights of spouses to pension benefits.

(a) Each pension plan to which this section applies shall provide that—

\* \* \* \* \* \*

(2) in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a qualified preretirement survivor annuity shall be provided to the surviving spouse of such participant.

\* \* \* \* \* \*

(c)(1) A plan meets the requirements of this section only if—

(A) under the plan, each participant—

(i) may elect at any time during the applicable election period to waive the qualified joint and survivor annuity form of benefit or the qualified preretirement survivor annuity form of benefit (or both), and

(ii) may revoke any such election at any time during the applicable election period, and

(B) the plan meets the requirements of paragraphs (2), (3), and (4).

(2) Each plan shall provide that an election under paragraph (1)(A)(i) shall not take effect unless—

(A)(i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public, or

\* \* \* \* \* \*

(5)(A) The requirements of this subsection shall not apply with respect to the qualified joint and annuity form of benefit or the qualified preretirement survivor annuity form of benefit, as the case may be, if such benefit may not be waived (or another beneficiary selected) and if the plan fully subsidizes the costs of such benefits.

\* \* \* \* \* \*

(6) If a plan fiduciary acts in accordance with part 4 of this subtitle [29 U.S.C. § 1101–45, concerning fiduciary responsibilities] in—

(A) relying on a consent or revocation referred to in paragraph (1)(A), or

(B) making a determination under paragraph (2),

then such consent, revocation, or determination shall be treated as valid for purposes of discharging the plan from liability

to the extent of payments made pursuant to this Act.

29 U.S.C. § 1055. Corresponding provisions are also contained in the Internal Revenue Code. *See* 26 U.S.C. § 417.

The Pension Plan contains the following provisions:

1.10. *Spousal Consent.* Any election by a Participant[4] under the Plan which, by its terms, requires Spousal Consent, shall be effective only if the Participant's spouse consents in writing to such election and the consent acknowledges the effect of the election and is witnessed by a notary public or a Plan representative appointed or approved by the Plan Administration Committee; provided, however, that unless otherwise provided by a qualified domestic relations order within the meaning of section 414(p) of the Code, no such consent shall be required if:

(a) the Participant and his spouse are legally separated or the Participant has been abandoned (within the meaning of local law) and the Participant has a court order to such effect; or

(b) it is established to the satisfaction of a Plan representative appointed or approved by the Plan Administration Committee that the consent of the Participant's spouse cannot be obtained because there is no spouse, because the spouse cannot be located or because of such other circumstances as the Secretary of the Treasury may prescribe in regulations.

\* \* \* \* \* \*

2.1. *Definitions.* Whenever used in the Plan, the following terms shall have the respective meanings set forth below unless otherwise expressly provided, and when the defined meaning is intended, the term is capitalized.

\* \* \* \* \* \*

(g) *"Beneficiary"* means any person, persons or entity described in Section 11.7 entitled to receive death benefits.

\* \* \* \* \* \*

(n) *"Eligible Spouse"* means the person to whom a Member is legally married at his Benefit Commencement Date or, if a Member dies prior to his Benefit Commencement Date, the person to whom a Member has been legally married throughout the 12–month period immediately preceding his date of death.

\* \* \* \* \* \*

(aa) *"Normal Retirement Age"* means age 65 and five years of participation, provided that the Normal Retirement Age of any member who had at least three years of Vesting Service on or before January 1, 1989 shall mean age 65.

\* \* \* \* \* \*

## ARTICLE X

### Pre–Retirement Death Benefits

10.1. *General.* If a Member dies before a Benefit Commencement Date ..., there shall be no death benefits payable except those specified in this Article X.

10.2. *Pre–Retirement 100% Spouse's Death Benefit*

(a) *Entitlement.* A Pre–Retirement 100% Spouse's Death Benefit will be payable if a Member dies before a Benefit Commencement Date, is survived by his Eligible Spouse, and—

\* \* \* \* \* \*

(2) dies while employed by an Employer or an Affiliate, provided he has attained Early Retirement Age or Normal Retirement Age,

\* \* \* \* \* \*

There shall be no reduction in a Member's Accrued Benefit on account of death benefit coverage under this Section.

(b) *Amount.* The amount of the monthly benefit payable to the surviving Eligible Spouse is ..., with 100% of the amount payable to the Member continued to the Eligible Spouse....

(c) *Commencement and Payment.* Such death benefit shall be payable as of the

---

**4.** "Participant" is not a term defined in the Pension Plan, but should be given the same meaning as the term is used in ERISA.

first day of the calendar month following the month in which the Member died, and shall be payable monthly for the remainder of the Eligible Spouse's Life, but in no case shall fewer than 60 monthly payments be made. Notwithstanding the preceding sentence, if the lump sum Actuarial Equivalent of the Eligible Spouse's death benefit is $3,500 or less, the Plan Administration Committee shall pay such lump sum amount to the Eligible Spouse in lieu of the Pre–Retirement 100% Spouse's Death Benefit.

\* \* \* \* \* \*

## ARTICLE XI

### Retirement Settlement Forms

\* \* \* \* \* \*

11.7. *Beneficiary.* A Member, from time to time, by signing a form furnished by the Plan Administration, may designate any legal or natural person or persons (who may be designated contingently or successively) to whom any benefits to which a Beneficiary may become entitled under the Plan are to be paid and the form in which such benefits are to be paid if the Member dies before he receives all of such benefits; provided, however, that if a Member is married on the date of his death, any designation of a form of benefits or of a person other than his Eligible Spouse as Beneficiary shall be effective only if consented to in writing by his Eligible Spouse, which consent may not be changed without spousal consent (unless the consent of the Eligible Spouse expressly permits designations by the Member without any requirement of further consent by the spouse). Such consent must be in writing filed with the Plan Administration Committee, must acknowledge the effect of such consent and must be witnessed by a notary public or a Plan representative appointed or approved by the Plan Administration Committee. A Beneficiary designation form will be effective only when the signed form is filed with the Plan Administration Committee while the Member is alive and will cancel all Beneficiary designation forms signed earlier. Except as otherwise specifically provided in this Section, if a deceased Member failed to designate a Beneficiary as provided above, or if the designated Beneficiary of a deceased Member dies before him or before complete payment of the benefits to which a Beneficiary may otherwise become entitled, such benefits shall be paid to the Member's surviving spouse or, if there is no surviving spouse, to the Member's surviving children (per stirpes) or, if he has no children, to the legal representative or representatives of the estate of the last to die of the Member and his Beneficiary.

\* \* \* \* \* \*

15.3. *Plan Administration Committee.* ... The Plan Administration Committee shall carry out the Company's responsibility and authority—

\* \* \* \* \* \*

(b) to determine the amounts and time of payment of benefits and the rights of Members and Beneficiaries to Plan benefits ... and to assure a full and fair review for any person who is denied a claim to any benefit under the Plan;

\* \* \* \* \* \*

15.8. *Committee's Decision Final.* To the extent permitted by law, any interpretation of the Plan and any decision on any matter within the discretion of the Plan Administration Committee made by the Committee in good faith shall be binding on all persons. A misstatement or other mistake of fact shall be corrected when it becomes known, and the Committee shall make such adjustment on account thereof as it considers equitable and practicable.

 There is no dispute that Britannica, as the Plan Administrator, has discretion to determine who is entitled to benefits under the Pension Plan and therefore its decision can only be overturned if arbitrary or capricious.[5] *See Loyola University of Chicago v.*

5. The Pension Plan provides that the Plan Administration Committee is to provide for full and fair review of benefit determinations. The Pension Plan itself does not specifically set forth review procedures. Although recited as an affirmative defense in the pleadings and referred to in passing in one brief, there is no argument on summary judgment that Butler has failed to

*Humana Insurance Co.,* 996 F.2d 895, 898 & n. 1 (7th Cir.1993); *Lister v. Stark,* 942 F.2d 1183, 1187–88 (7th Cir.1991); *Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund,* 900 F.2d 1138, 1141 (7th Cir.1990). Britannica's construction of the Pension Plan documents will not be overturned if it is a reasonable interpretation. *Exbom,* 900 F.2d at 1142–43 (quoting *Shull v. State Machinery Co., Inc. Employees Profit Sharing Plan,* 836 F.2d 306, 308 (7th Cir. 1987)). "A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable." *Lister,* 942 F.2d at 1188 (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989)). If the Pension Plan is ambiguous as to whether a spouse's death benefit can be designated to be paid to another beneficiary, then Britannica's construction must be upheld if reasonable.[6] However, if the Pension Plan unambiguously provides that spouse's death benefits can be designated to a beneficiary other than the spouse, Britannica's construction would be arbitrary and capricious. *See Lockhart v. United Mine Workers of America 1974 Pension Trust,* 5 F.3d 74, 78 (4th Cir.1993).

■ Britannica argues that the Pension Plan is statutorily prohibited from paying the spouse's death benefit to anyone other than a spouse. Section 1055(a)(2) provides that a "qualified preretirement survivor annuity shall be provided to the surviving spouse" of a person who dies before the annuity starting date. However, § 1055(c)(1) provides that a plan must also provide that the benefit can be waived. "Waive," as used in the statute, does not mean simply that the participant gives up the benefit, but also means that the participant, with the spouse's consent, has the option of designating that the benefit will

be paid to a beneficiary other than the spouse. 29 U.S.C. § 1055(c)(2)(A)(i). *See also* 26 C.F.R. § 1.401(a)–20(A–31)(a) ("Both the participant's waivers of a QPSA [qualified preretirement survivor annuity] and QJSA [qualified joint and survivor annuity] and the spouse's consents thereto must state the specific nonspouse beneficiary (including any class of beneficiaries or any contingent beneficiaries) who will receive the benefit."). Consistent with this reading of the statute, the applicable Treasury Regulations refer to a participant's option of designating a different beneficiary for the QPSA, *see* 26 C.F.R. § 1.401(a)–20(A–31)(a); *see also* 26 C.F.R. § 1.401(a)–20(A–37); and cases have held or indicated that the QPSA can be designated to be paid to someone other than a spouse. *See, e.g., Fox Valley & Vicinity Construction Workers Pension Fund v. Brown,* 897 F.2d 275, 279 (7th Cir.) (en banc), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990); *Zinn v. Donaldson Co.,* 799 F.Supp. 69, 72 (D.Minn.1992). Contrary to Britannica's argument, if the requirements of § 1055(c) apply to the Pension Plan, the Plan must provide that a member can, as long as the spouse consents, designate that the spouse's death benefit be paid to someone other than the spouse.

Section 1055(c)(5)(A) provides that the requirements of subsection 1055(c) will not apply if the benefit is fully subsidized by the plan and there is no provision for any waiver of the benefit. It is undisputed that a Britannica employee is not required to make any contribution to pay for the spouse's death benefit. The parties do not dispute that this benefit is fully subsidized by Britannica. *See* 26 C.F.R. § 1.401(a)–(20)(A–38)(b) ("A QPSA is fully subsidized if the amount is not reduced because of the QPSA coverage and if no charge to the participant under the plan is

---

properly exhaust any administrative review procedures that may have been available to her. There is also no contention that Britannica has failed to provide adequate review procedures. As do the parties, it is assumed that the positions presented before this court are the same positions taken in any administrative proceedings.

**6.** Butler argues that the language of the Pension Plan, if ambiguous, should be construed against Britannica, the drafter of the Pension Plan language (either directly or in its representative capacity as Plan Administrator). That rule, however, cannot apply to this case where the Pension Plan does not dispute its obligation to pay benefits, only to whom the benefits should go. It is not a construction against Britannica or the Pension Plan to disburse the benefits to Butler; it would only be a construction against Cotini, who had no role in drafting the language of the Plan.

made for the coverage. Thus, a QPSA is fully subsidized in a defined contribution plan.") Therefore, it would be statutorily permissible for the Pension Plan either to permit a waiver or to provide that this benefit may not be waived in any manner. Therefore, the language of the Pension Plan must be examined to determine whether it *permits* or *prohibits* any form of waiver or designation of the spouse's death benefit.

If waiver is permitted, the provisions must comply with the requirements of § 1055(c). *See* 26 C.F.R. § 1.401(a)–(20)(A–37) ("if the plan offers an election to waive the benefit or designate a beneficiary, it must satisfy the election, consent, and notice requirements of" 29 U.S.C. § 1055(c)(1)–(4)). Section 11.7 of the Pension Plan establishes a spousal waiver procedure in accordance with the requirements of § 1055(c) which indicates that the Plan *permits* such a waiver.

Section 10.2(b) of the Pension Plan refers to the 100% spouse's death benefit being paid to the spouse.[7] There is, however, no prohibition in § 10.2 stating that a spouse's death benefit cannot be designated to be paid to another. Section 11.7 (which Britannica does not address in its brief[8]) is the specific provision that provides for the designation of other beneficiaries. That provision provides that a spouse's death benefit may be designated to be paid to someone other than the spouse. No limitation or prohibition against waiver is found in this section.

Section 2.1(g) of the Pension Plan defines beneficiary as meaning "any person, persons or entity described in Section 11.7 entitled to receive death benefits."[9] Section 11.7 refers to Eligible Spouses and surviving spouses who are entitled to death benefits. It also refers to designation "of a person other than his Eligible Spouse as Beneficiary." A corollary of that provision is that the eligible spouse is the beneficiary if there is no desig-

nation of another person. Eligible spouses are among those persons described in § 11.7 as being entitled to death benefits. Therefore, an eligible spouse is one type of beneficiary. Such a construction of the Plan language is consistent with the use of the term beneficiary in ERISA. *See* 29 U.S.C. § 1002(8) ("a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder"). Such a construction is also consistent with the beneficiary designation form which refers to an eligible spouse as a beneficiary: "If you are married to an eligible spouse (as defined by the plan), your spouse is your primary Pension Plan beneficiary automatically."

The Pension Plan unambiguously defines an eligible spouse as a beneficiary. Section 11.7 unambiguously provides that "*any* benefits" due to a beneficiary may be designated to be paid to any person provided the eligible spouse consents. There being no express provision in § 10.2 or § 11.7 excluding the designation of a spouse's death benefit, the unambiguous language of § 11.7 controls. The Pension Plan is unambiguous in providing that Celia's spouse's death benefit could have been designated to be paid to a person other than her husband. Britannica's construction of the Pension Plan language is unreasonable. It was arbitrary and capricious for Britannica to refuse to consider the validity of Celia's Pension Plan designation form which, of course, it provided to her and accepted after it was executed without objection.

■ Cotini argues that the designation form he signed is not a valid consent to the waiver of his right to spousal benefits because he did not sign the form in the presence of the notary public. In the briefs on the pension benefits, Britannica does not ad-

---

7. Section 10.2(c) also provides that some payments could go to a person or entity other than a spouse. Payments are to last for at least 60 months even if the Eligible Spouse dies less than 60 months after the payments begin.

8. Cotini and Butler do address the language of this section.

9. Cotini points out that Sections 10.2 (preretirement 100% spouse's death benefit) and 10.3

(preretirement 50% spouse's death benefit) provide for payments to eligible spouses, whereas § 10.4 (preretirement single sum death benefit) provides for payments to a beneficiary. Cotini relies on these sections as distinguishing between an eligible spouse and a beneficiary. The definition of beneficiary, however, references § 11.7, not Article 10.

dress this issue. There is also no indication that Britannica considered this issue during any prior administrative proceeding.[10] If the only reasonable determination is that the designation is valid or the only reasonable determination is that the designation is invalid (or, otherwise as a matter law, there can be only one correct decision), this issue can be resolved by the court. However, if a plan fiduciary can reasonably exercise its discretion to reach either result, this issue might not be presently resolvable and Butler would only be entitled to a declaration or injunctive relief requiring Britannica, as the Plan Administrator, to resolve the issue.

Applied literally, both ERISA (29 U.S.C. § 1055(c)(2)(A)(iii)) and the Pension Plan (§§ 1.10; 11.7) require that Cotini's consent to the designation be witnessed by the notary public. If not signed in the notary public's presence, there is risk that the signature is not genuine. That, however, is not an issue in this case.[11]

The purpose of notarization is to prove that the person actually signed the instrument. *See Leyda v. Norelli,* 387 Pa.Super. 411, 564 A.2d 244, 246 (1989), *appeal denied,* 525 Pa. 627, 578 A.2d 414 (1990); *Clements v. Snider,* 409 F.2d 549, 550 (9th Cir.1969); *Shadden v. Zimmerlee,* 401 Ill. 118, 81 N.E.2d 477, 481 (1948); Uniform Law on Notarial Acts § 2(c), Comment. Under § 1055, a genuine signature is the means by which consent, election and notice are established. It has often been held that documents actually signed are binding or valid despite defects in acknowledgements. *See, e.g., People ex rel. Grayslake v. Village of Round Lake Beach,* 242 Ill.App.3d 750, 182 Ill.Dec. 527, 531, 609 N.E.2d 1061, 1065–66 (2d Dist.), *appeal denied,* 151 Ill.2d 576, 186 Ill.Dec. 393, 616 N.E.2d 346 (1993); *People ex rel. Northbrook v. Village of Glenview,* 194 Ill.App.3d 560, 141 Ill.Dec. 242, 252, 551

N.E.2d 235, 245 (1st Dist.1989); *Pitfield v. Fidelity Homestead Association,* 271 So.2d 879, 881 (La.App.1973); *Clovis Finance Co. v. Sides,* 72 N.M. 17, 380 P.2d 173 (1963); *Kirsch v. Barnes,* 153 F.Supp. 260, 262 (N.D.Cal.1957); *Shadden,* 81 N.E.2d at 481; *Wilkerson v. Dennison,* 113 Tenn. 237, 80 S.W. 765, 767 (1904). *See also* 1 Am.Jur.2d *Acknowledgements* §§ 40–43 (1962). The pension benefits designation form, as required by statute, itself contains warnings to help ensure that any waiver by a spouse will be knowing and considered. The statute also requires that notices and summaries be sent out to help ensure the spouse has such knowledge. The purposes of the statute are satisfied where the spouse does not dispute his signature on the form, but signed it outside the presence of any notary public or plan representative. The benefit fund may accept as valid a designation form that a spouse admits signing, but which was signed by the spouse outside the presence of the witnessing notary public or plan representative, without defeating any substantive statutory objective.

Ordinarily, the discretionary determination as to whether the Pension Plan itself calls for literal application of the notary public requirement should be left for the Pension Plan Administrator to determine. *Wolfe v. J.C. Penney Co.,* 710 F.2d 388, 394 (7th Cir.1983); *DePina v. General Dynamics Corp.,* 674 F.Supp. 46, 50 (D.Mass.1987). However, a remand is unnecessary where it would be a "useless formality." *Wolfe,* 710 F.2d at 394; *DePina,* 674 F.Supp. at 50–51. The Savings Plan contains language essentially identical to the language of the Pension Plan that also requires that spousal consents to designations be witnessed by a notary public or plan representative. Britannica, as the Savings Plan Administrator, has taken the position that the savings plan designation is valid even if Cotini signed it outside the

---

**10.** There is also no argument that Cotini waived this contention by failing to first present it in administrative proceedings.

**11.** Cotini's failure to read the documents which contain his valid signature would not affect the validity of the documents whether signed or not signed in the presence of a notary or witness. *Cf. Paper Express, Ltd. v. Pfankuch Maschinen,* 972 F.2d 753, 757 (7th Cir.1992); *United States*

*v. Stump Home Specialties Manufacturing, Inc.,* 905 F.2d 1117, 1120 (7th Cir.1990); *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1292 (7th Cir.1989); *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1417 (7th Cir.1987), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988); *Comprehensive Accounting Corp. v. Rudell,* 760 F.2d 138, 140 (7th Cir.1985).

presence of the notary public. *See* Defendant Encyclopaedia Britannica, Inc.'s Reply to Memorandum of Anthony Cotini in Response to Motion of Encyclopaedia Britannica for Summary Judgment on Cross–Claim at 1–4. While it would be possible for Britannica, in its capacity as Pension Plan Administrator, to construe the language of the Pension Plan differently from the language of the Savings Plan, there has been shown no basis for it to do so. A remand for an explicit determination by Britannica would be a useless formality. Therefore, Butler is entitled to summary judgment on her claim for pension benefits.

■ Like the Pension Plan, the Savings Plan provides the Plan Administrator with the discretion to make benefit determinations. Savings Plan §§ 10.1, 10.3, 10.8. The arbitrary or capricious standard of review applies to Britannica's savings benefits determination as well. The parties agree that, in accordance with ERISA and the Savings Plan's terms, Celia had the power, with her spouse's consent, to designate that the savings benefits would be paid to someone other than her spouse. Like the Pension Plan, the Savings Plan provides that the spousal consent to the designation be "witnessed by a Plan representative or a notary public." Savings Plan § 4.2. *Accord id.* § 1.10.

■ Britannica has taken the position that Cotini failed to timely raise his objections to the validity of the savings benefits designation. Unlike the pension benefits, the savings benefits have already been distributed. Pursuant to 29 U.S.C. § 1055(c)(6), neither a plan fiduciary nor the plan may be held liable for paying further benefits where it has already distributed the benefits based on a facially valid designation form. Cotini concedes that the savings benefits designation form, including the spousal consent contained thereon, was facially valid. Where, however, the fiduciary violates its fiduciary duties by distributing the benefits at a time that it has good reason to believe that the facially valid designation form may actually be invalid, it will still be liable to pay benefits to the proper beneficiary. *See Vilas v. Lyons,* 702 F.Supp. 555, 559–60 (D.Md.1988).

■ Whether a factual dispute exists as to this issue need not be determined. Neither need it be determined whether Britannica, Butler, or both would be the proper party against whom Cotini should make his claim for savings benefits. Even if Cotini were to pass these hurdles, and even assuming that Cotini can prove that he signed the savings benefits designation outside the presence of the notary public, he could not succeed on his claim. As was held with respect to the pension benefits, an administrator may recognize a designation a spouse admits to signing, but which the spouse signed outside the presence of a notary public or plan representative. Britannica, as Savings Plan Administrator, has determined that a designation is valid under the Savings Plan when executed under those circumstances. Such a determination is within the Plan Administrator's discretion and therefore must be upheld. Britannica and Butler are entitled to summary judgment on Cotini's claims for savings benefits.

IT IS THEREFORE ORDERED that:

(1) Cotini's motion to clarify record [76–1] is granted.

(2) Encyclopaedia Britannica's motion for summary judgment on the complaint [22], Cotini's motion for summary judgment on the pension plan [53], and Cotini's motion for summary judgment on his counter-claim against Butler [73] are denied.

(3) Butler's motion for summary judgment on her complaint [40], Butler's motion for summary judgment on the Savings Plan [86], and Encyclopaedia Britannica's motion for summary judgment on Cotini's cross-claim [63] are granted.

(4) The Clerk of the Court is directed to enter judgment (a) in favor of Butler and against Britannica, Cotini, and Equitable Life Assurance granting plaintiff relief on her complaint; (b) in favor of Butler and against Cotini dismissing Cotini's counter-claim with prejudice; and (c) in favor of Britannica and against Cotini dismissing Cotini's crossclaim with prejudice. The Clerk of the Court is further directed to enter judgment directing Britannica and Equitable Life Assurance to disburse past due spouse's

death benefits of Celia Cotini and remaining future monthly spouse's death benefits of Celia Cotini to Nicolette Anne Butler.