United States Court of Appeals,

Eleventh Circuit.

No. 96-4277.

Madeline LASCHE, Plaintiff-Appellee,

v.

GEORGE W. LASCHE BASIC PROFIT SHARING PLAN, a.k.a. George W.
Lasche Keogh Trust, Defendant-Appellant,

Theresa Wenisch, Defendant-Third Party Plaintiff-Appellant,

Patricia Clements, individually, and as Co-Personal
Representatives of the Estate of George W. Lasche and as Successor
Plan Administrators of the George W. Lasche Basic Profit Sharing
Plan, Defendant-Appellant,

Patricia Lasche Clements, as Trustee of the George W. Lasche
Trust, Defendant-Third Party Plaintiff-Appellant,

Theresa Lasche Wenisch, as Trustee of the George W. Lasche Trust,
Defendant-Appellant,

Kathryn Lasche Berggren, Third Party Plaintiff,

Merrill Lynch, Pierce, Fenner & Smith, Inc., Third Party
Defendant-Appellee.

May 6, 1997.

Appeal from the United States District Court for the Southern
District of Florida. (No. 93-8645-CIV-JAG), Jose A. Gonzalez, Jr.,
Judge.

Before HATCHETT, Chief Judge, BARKETT, Circuit Judge, and FAY,
Senior Circuit Judge.

FAY, Senior Circuit Judge:

In this appeal, we will decide whether a spouse legally waived
her rights to her deceased spouse's retirement plan. The district
court found that the spouse did not waive her rights to her late
husband's retirement plan because the spouse's waiver did not
comply with the ERISA requirement that a spouse's consent be
"witnessed by a plan representative or a notary public," 29 U.S.C.

§ 1055(c)(2)(A)(iii), and because the waiver language was too general to be effective. Because the district court was correct in concluding that the waiver failed to comply with the requirements of ERISA, we affirm.

## BACKGROUND

George Lasche and appellee Madeline Baker Lasche were married in August of 1985. Prior to being married, George and Madeline entered into a Prenuptial Agreement. Under the terms of the Prenuptial Agreement, both George and Madeline agreed to waive any rights to the other's property. Following their marriage, both George and Madeline executed a First Amendment to Pre-Nuptial Agreement ("Amendment"). In the Amendment, George and Madeline specifically waived any interest to the other's retirement benefit plan and agreed to execute any documentation required to confirm their waiver in the other's retirement benefit plan.[1]

Several years before getting married to Madeline, George adopted a "Keogh" retirement plan. This plan was reformed several times mainly because George transferred his retirement funds to different financial institutions. In 1989, George, for the last time, transferred funds from a Dean Witter & Company retirement plan to Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") and its "Basic Retirement Program."

---

[1]Specifically, paragraph (c) in the Amendment stated: Each party waives and releases any claim, demand or interest in any pension, profit sharing, KEOGH or other retirement benefit plan qualified under ERISA and the Internal Revenue Code of the other party and agrees to execute any documentation to verify and confirm this fact with the administrator of such plan.

R1-39-Exhibit 1.

In connection with the opening of a Merrill Lynch Basic Retirement Program, Merrill Lynch required George to execute a document entitled "Basic Retirement Plan New Participant Form" ("Form").  The Form designated George's three daughters from a previous marriage: Patricia Clements, Theresa Wenisch, and Kathryn Berggren as his beneficiaries.  Because George designated his daughters as beneficiaries, instead of his spouse Madeline, Madeline was required to sign part four of the Form, which states:

Spouse's Consent to Beneficiary Designation:

I am the spouse of the participant who made the beneficiary designation on this form and I consent to it.  I understand that if someone other than me has been designated beneficiary, my consent means that I give up rights I may have under the Plan and applicable law (other than rights I may later have as the survivor in a joint annuity with the participant) to receive those amounts payable under the Plan by reason of the participant's death to which I would otherwise be entitled if I were the Participant sole beneficiary.

R2-49-Exhibit E-Part 4.  Madeline signed part four of the form. Part four also contains a designated space where the signature of an "employer[2]" or notary public is needed to confirm the consenting spouse's signature.  This space was left blank.  George signed part five of the form as the Plan's Administrator.

George died in 1993 before receiving any benefits from the Merrill Lynch retirement plan.  After George's death, Madeline requested a distribution of the plan's benefits from the administrators of the plan, George's daughters.  The daughters

---

[2]We note that the Merrill Lynch waiver form provides that the signature of the spouse be witnessed by an "employer or notary public."  We do not know why the term "employer" is used when the law specifically provides for plan representative. Under the facts of this case, whether such a difference in terminology is material is not before us.

refused. Subsequently, Madeline filed suit against Defendants-Appellants George W. Lasche Basic Profit Sharing Plan a/k/a George W. Lasche Keogh Trust, Theresa Lasche Wenisch, and Patricia Lasche Clements. The gist of Madeline's complaint is that under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461 (1994), she, as George's surviving spouse, is entitled to receive the benefits of George's retirement plan.

Prior to trial, both sides filed motions for summary judgment. In Madeline's motion, she argued that her waiver was legally defective, while Defendants asserted the opposite; Madeline's waiver was legally valid. After conducting a hearing on the cross-motions, the district court entered an order granting Madeline's motion for summary judgment, consequently denying Defendants' motion. In the order, the district court found as a matter of law that Madeline's waiver "did not meet the ERISA requirement that the consent be "witnessed by a plan representative or a notary public,' " R3-85-6, and that the waiver language contained in part four of the Form failed to disclose to Madeline which specific rights were being relinquished by the waiver. R3-85-4. In accordance with the ruling, the district court found that Madeline was entitled to George's entire account balance under the retirement plan.[3] 29 U.S.C. § 1055(a) (1994).

---

[3]Following the district court's order granting Madeline's motion for summary judgment, George's three daughters obtained leave of court to file a Third Party Complaint against Merrill Lynch. In the Third Party Complaint, the daughters allege that Merrill Lynch breached its duty by failing to provide and execute a legally effective Spousal Consent. The daughters also moved to join Merrill Lynch to the original suit as an indispensable party and to stay the execution of the final judgment pending Merrill Lynch's joinder. The district court denied the motion. The

Final judgment was entered after Madeline voluntarily dismissed a remaining count which was not resolved by the district court's summary judgment order. Defendants appeal from this final judgment. On appeal, Defendants contend that the district court erred as a matter of law in holding that the waiver and consent executed by Madeline failed to comply with the requirements of ERISA.

## STANDARD OF REVIEW

A motion for summary judgment may be granted only if no genuine dispute remains as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Since the facts of this case are not in dispute, we need only consider whether Madeline was entitled to summary judgment as a matter of law. As with all questions of law, we review the district court's order granting summary judgment under the *de novo* standard of review. *International Union, United Mine Workers v. Jim Walter Resources,* 6 F.3d 722, 724 (11th Cir.1993).

## ANALYSIS

Because at issue in this appeal is whether Madeline legally waived her rights to George's retirement plan, we will first set forth the ERISA requirements of an effective waiver. To establish an effective waiver of benefits under ERISA requires that:

> (i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designation by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent

daughter's Third Party Complaint against Merrill Lynch remains pending.

> acknowledges the effect of such election and is witnessed by a plan representative or a notary public....

29 U.S.C. § 1055(c)(2)(A). Thus, ERISA mandates that a spouse's consent be "witnessed by a plan representative or a notary public." 29 U.S.C. § 1055(c)(2)(A)(iii). In our case, the space provided for an "employer" (*see supra* note 2) or notary public to sign next to Madeline's signature under the waiver clause was left blank. Applying this undisputed fact to ERISA requirement 29 U.S.C. § 1055(c)(2)(A)(iii), the district court ruled that Madeline's waiver failed as a matter of law. We agree.[4]

The statutory language of ERISA requirement 29 U.S.C. § 1055(c)(2)(A)(iii) is unambiguous. Strictly applying this requirement to the facts of our case, the district court was correct in concluding that Madeline's waiver was legally defective. In an attempt to make Madeline's waiver legally valid, Defendants urge us to consider that since Madeline acknowledges signing the waiver, the purpose behind a plan representative or notary public witnessing her signature is served. In support of this argument, Defendants rely on *Butler v. Encyclopaedia Britannica, Inc.,* 843 F.Supp. 387 (N.D.Ill.1994), *aff'd in part and rev'd in part,* 41 F.3d 285 (7th Cir.1994).

In *Butler,* a spouse designated her daughter, instead of her husband, as the beneficiary of pension benefits. Because the spouse designated her daughter as the beneficiary, rather than her

---

[4]As to the district court's other basis for granting summary judgment, the waiver language was too general, because we affirm the district court on the basis that Madeline's waiver was not "witnessed by a plan representative or a notary public....," we find it unnecessary to address whether the waiver language was legally effective.

husband, the husband needed to sign a consent form, which he acknowledged doing. The notary portions of the consent forms were notarized. Following the spouse's death and after the pension plan administrator awarded benefits to the husband, the daughter filed suit.

The husband challenged the designation of the daughter as beneficiary, arguing among other grounds, that his consent to the waiver of benefits is not valid because his signature was not signed in the presence of a notary public. In awarding the daughter the benefits, the district court dismissed the husband's argument stating a "benefit fund may accept as valid a designation form that a spouse admits signing, but which was signed by the spouse outside the presence of the witnessing notary public or plan representative, without defeating any substantive statutory objective." *Butler,* 843 F.Supp. at 396. The husband appealed the district court's order. On appeal, the Seventh Circuit declined to address whether the husband signature was witnessed by a notary public because the husband "lacked sufficient evidence to prove that the consent form he signed was not properly witnessed." *Butler,* 41 F.3d at 294.

*Butler* is distinguishable from our case on the basis that in *Butler* a notary signed the consent form. The Seventh Circuit in finding that the husband's consent form was valid relied on the fact that the husband's signature was notarized. *See Butler,* 41 F.3d at 294-95 ("A notary public's certificate of acknowledgment, regular on its face, carries a strong presumption of validity."). In our case, neither a notary nor a plan representative ever signed

the form witnessing Madeline's signature.  This omission is fatal to Defendant's reliance on *Butler.*  While Defendants argue that *Butler* stands for the proposition that an acknowledged waiver is valid "even if not signed in the presence of notary," we disagree. To extend *Butler* as Defendants suggest and now allow a spouse's acknowledged signature waiver to be effective absent the signature being witnessed by a notary public or plan representative, is a precedential path we refuse to travel.  To hold otherwise would contravene the explicit waiver requirements of ERISA that Congress has enacted.

Defendants also assert that George's signature as the Plan's Administrator in part five of the Form satisfies ERISA's requirement that Madeline's consent be witnessed by a notary public **or plan representative.**  As an initial reason for rejecting this contention is Defendants' failure to raise this issue before the district court.  *See Narey v. Dean,* 32 F.3d 1521, 1526-27 (11th Cir.1994) (Court generally will not consider on appeal issues not raised before the district court.).  Moreover, George's signature was in a different section than the spouse's consent section of the Form.  Part four of the Form contained the space where a notary public or plan representative was required to sign the form confirming Madeline's signature, not part five, a completely different section.  Thus, the fact that George signed part five of the form as the Plan's Administrator is irrelevant to the undisputed fact that the "employer" or notary public signature space in part four of the Form was blank.

Defendants also argue that Madeline's intent to waive her

rights to George's retirement plan as evidenced by the Prenuptial Agreement, the First Amendment to the Prenuptial Agreement, and by her signature in the spousal consent section of Merrill Lynch's New Participant Form should be considered in determining whether a valid waiver took place. We disagree. Congress in enacting 29 U.S.C. § 1055(c)(2)(A) explicitly set forth certain requirements that must be followed. A person's subjective intent is irrelevant to whether these requirements were followed. In our case, the parties failed to exactly comply with the requirements of ERISA, unfortunately resulting in an outcome that may be contrary to both George's and Madeline's intent.

Finally, we note the public policy of protecting spouses' rights to spousal retirement benefits. *See* S.Rep. No. 98-575, at 1 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2547, 2547. This policy is consistent with the general policy of protecting spousal rights. *See, e.g., Via v. Putnam,* 656 So.2d 460, 464 (Fla.1995) ("Florida ... has always maintained a strong public policy in favor of protecting a surviving spouse of a marriage in existence at the time of a decedent's death."). Thus, these strict ERISA requirements designed to ensure a valid waiver of a spouse's retirement plan are consistent with the legislative policy of protecting spousal rights. Therefore, we believe any waiver of retirements benefits by a spouse must strictly comply with the consent requirements set forth in ERISA.

CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment.

AFFIRMED.