SYLVIA SWANSON, Plaintiff-Appellant, *v.* LESTER WOLSTENHOLM *et al.*, Defendants-Appellees.

(No. 72-228; ▮▮▮▮▮▮)

Third District—March 1, 1973.

John C. Tower, of Rockford, for appellant.

John A. Leemon, of Mt. Carroll, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Whiteside County denying relief to plaintiff Sylvia Swanson as against defendants Lester Wolstenholm and Frances Wolstenholm in a declaratory judgment action seeking to determine the rights and liabilities of the parties with respect to a division fence between their respective properties. On appeal in this court, plaintiff contends that she is legally entitled to seek judicial review of a fence viewers' decision which was made with respect

to the fence between the properties of plaintiff and defendants. Plaintiff also contends that she established by a preponderance of the evidence that the decision of fence viewers chosen by the parties was arbitrary and inequitable.

The defendants Wolstenholm acquired the farm bordering the Swanson property in 1951. Nothing was filed of record relating to the fence between the two farms. Approximately a year after the Wolstenholms had acquired their property, Mr. Wolstenholm learned from his tenant that his tenant was maintaining the right-hand portion of the east-west division fench and the left-hand portion of the north-south fence. Mr. Wolstenholm then went to Mr. Swanson (who was then alive) and asked him to take care of the north half, which would be the common practice in Whiteside County of maintaining the right-hand portion of the fence as the owner faced it from his property. Swanson refused to make a change in the practice which was then established as to the fence. Wolstenholm attempted to have Swanson change the arrangement several times after that.

In 1971, Wolstenholm no longer had a tenant on his farm. He had not had livestock for some years and was cropping the field adjacent to the division fence instead of using the field for a pasture. When the fields adjacent to the fence were in pasture, it was indicated that there would be no damage to crops in the event the livestock had gone through the division fence area. In 1971, 20 years after the acquisition of the farm by the defendants Wolstenholm, Mr. Wolstenholm again went to Mr. Swanson and requested that Swanson undertake the maintenance of the north portion of the north-south division fence in accordance with the apparent custom in Whiteside County. When Swanson refused, the Wolstenholms selected a fence viewer under the terms of the Illinois Fences Act (Ill. Rev. Stat. 1971, ch. 54), and gave notice of that fact to Swanson. The Swansons then selected a fence viewer and gave notice of this fact to the Wolstenholms. The two fence viewers then went out onto the adjoining farms, examined the division fence and talked to the Swansons and the Wolstenholms. The same day the fence viewers made a decision which they reported in writing and mailed to the attorneys for each of the parties, in accordance with the Illinois Fences Act. (Ill. Rev. Stat. 1971, ch. 54, sec. 9.) The decision changed the practice which had been followed previously by plaintiff and defendants with respect to maintaining the north-south division fence and found that defendants should maintain the south half of the north-south division fence as they had desired and that plaintiff should maintain the north half of the same division fence.

There was evidence that the custom in the community where the

farms were located was that the owner took maintenance of the portion of the fence to his right as he faced the fence from his own land. There was also evidence that a creek crosses or goes through the north half of the north-south division fence in two places, and, where the fence crosses the creek, flood gates or flood fencing are required. This means that considerable maintenance is necessary with flood gates because, when there is high water, flood gates must be replaced.

The first issue for consideration is whether plaintiff is entitled to seek judicial review of the fence viewers' decision. Defendants contend that the fence viewers' decision is final and binding upon the parties to the dispute and that appeal is not authorized. The trial court apparently accepted this construction of the Fences Act. By the terms of the Fences Act, Ill. Rev. Stat. 1971, ch. 54, sec. 9, it is provided as follows:

> "The two fence viewers so chosen shall examine the premises, and hear the allegations of the parties. In case of their disagreement, they shall select another fence viewer to act with them; and *the decision of any two of them shall be final upon the parties to such dispute, and upon all parties holding under them.*" (Emphasis added.)

■■ There is nothing in the Act which indicates what a party who may be dissatisfied with the fence viewers' decision may do to obtain relief. The trial judge ruled that he did not believe that either injunctive relief or a declaratory judgment action were appropriate remedies, and, in referring to the Fences Act, said that the decision of the fence viewers "shall be final upon the parties to such dispute." It was the apparent conclusion of the trial court that the parties were bound by the decision of the fence viewers and could not then appeal to the court for relief from such determination. No Illinois predecedents have been directed to our attention on the precise issue. We find some guidance in decisions of the courts of other states. In the language of such cases as *McKeever v. Jenks,* 59 Iowa 300, 13 N.W. 295, at 296-297, the Iowa Supreme Court stated, "the fence viewers in this case determined the sufficiency of the hedge and its value. The Statute clothes them with jurisdiction to decide upon these matters. * * * Their decision upon questions within their jurisdiction is conclusive." In the Iowa case of *Scott v. Nesper,* (Iowa 1922) 188 N.W. 889, 892, the court found that a decision of fence viewers was final and binding upon the parties unless appealed from. In the Michigan case of *Rogers v. Van Blarcom,* 28 N.W.2d 101, at 103, the Supreme Court of Michigan stated:

> "While the laws of Michigan do not provide for an appeal from the determination of fence viewers, yet a court of chancery can review such action on the part of the fence viewers and annul

their determination when it is found that their determination was arbitrarily made or inequitable to either of the interested parties." Despite the lack of specific provisions for appeal, we believe that a party is legally entitled to seek judicial review of the fence viewers' decision in Illinois for the purpose of determining whether such decision was arbitrary and inequitable. We agree with the Supreme Court of Michigan as hereinabove noted in the *Rogers v. Van Blarcom* case.

■■ The only remaining question is whether the evidence established by a preponderance that the fence viewers' decision in this cause was arbitrary or inequitable. From the record it is apparent that Mr. Wolstenholm complained to Mr. Swanson as soon as he discovered the manner in which the fence was being maintained and had several discussions with Mr. Swanson concerning the fence in the years following. No equitable estoppel can be invoked as against the Wolstenholms since they did not by representations or acts induce the Swansons to alter or change their position in any material respect in the practice of maintenance and repair of the bordering fence for the 20 year period. (*Ptaszek v. Konczal*, 7 Ill.2d 145, at 153; *Skelly v. Ersch*, 305 Ill. 126, at 133.) So far as the record is concerned, while they proceeded with maintenance for a period of many years of the portion of the fence on which the flood gates were located, the Wolstenholms never acquiesced in such arrangement.

■■ There is a conflict of evidence as to whether it was the custom in the vicinity in which the fences were located to maintain the portion of the fence to the right of the owner as he faced the fence. There was evidence that usage by the parties could establish a contrary arrangement. It is clear, however, that in the event of a dispute with respect to what sort of arrangement the parties should be required to accept, a determination of such dispute can be made by fence viewers. While the contention of plaintiff is supported by some evidence in the record of the long-established practice of maintaining the north-south division fence between the lands of the plaintiff and defendants (which practice had been initiated by the Swansons and a prior owner of the Wolstenholm farm), there was also evidence of the custom relating to maintenance of fences in Whiteside County which was inconsistent with such arrangement. There was evidence that the Wolstenholms had no notice of any previous agreement, oral or otherwise, and they would, therefore, not be bound by such agreement with a predecessor in interest. *Rogers v. Van Blarcom*, 28 N.W.2d 101.

■■■ The legislative act vested a conclusive right of determination in the fence viewers subject only to review to determine whether the decision is arbitrary or inequitable. Acts of this type have been held to be Constitutional. (*McKeever v. Jenks*, 59 Iowa 300, 13 N.W. 295.) In view

of the nature of the Act, we feel that we must give weight to the Illinois Statute which reposes in fence viewers a right of determination which is expressed as being "final" and that a court of review should not set aside such determination unless the record clearly and unequivocally shows that the determination was arbitrary or inequitable. From a review of the evidence in the present case we do not believe that the fence viewers' determination could be classified as arbitrary or inequitable. A decision supporting the view of either plaintiff or defendants by the fence viewers would have been appropriate in this case in the state of the record and should be affirmed on appeal. We find that the record does not justify a conclusion that such determination was arbitrary or inequitable.

The judgment of the circuit court of Whiteside County is, therefore, affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.