*In re* ESTATE OF RONALD L. WALLIS, SR., Deceased (Mary-Ellen Whitling, Independent Ex'r, Plaintiff-Appellant, v. Julia A. Snyder *et al.*, Defendants-Appellees).

Fourth District   No. 4—95—0188

Opinion filed December 21, 1995.

Perry D. Baird, of Casey, for appellant.

James M. Grant, of Brainard, Bower & Kramer, of Charleston, for appellees.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff Mary-Ellen Whitling, as independent executor of the estate of Ronald Wallis, decedent, appeals the circuit court's denial of Wallis' request for declaratory and injunctive relief under the Fence Act (Act) (765 ILCS 130/1 *et seq.* (1992)). We affirm.

In 1947, Wallis purchased a parcel of land in Casey Township, Clark County, Illinois. The parcel shared a common boundary with land then owned by defendant Hazel Gard. Wallis and Gard soon entered an oral agreement whereby Gard would maintain the fence along the north 40 rods of the common boundary, and Wallis would maintain the fence along the south 40 rods of the common boundary.

In 1955, Wallis purchased another parcel of land which was also adjacent to Gard's land. Wallis and Gard entered an oral agreement whereby Gard would maintain the fence along the south 20 rods of this common boundary, and Wallis would maintain the fence along the north 20 rods of this common boundary.

In 1987, Gard conveyed the remainder interest of her land to defendant Julia Snyder but reserved a life estate for herself. In 1994, Wallis decided to pasture cattle on his land. The fence on the boundary between his and Gard's land, however, was in disrepair and was overgrown with brush. Gard was residing in a nursing home by this time, and Wallis was unable to resolve with Snyder the allocation of the fence maintenance. Wallis and Snyder decided to submit their dispute to two "fence viewers" pursuant to sections 1, 4 and 5 of the Act. (765 ILCS 130/1, 4, 5 (West 1992).) Both Wallis and Snyder each chose a different member of the Casey Township Board of Trustees to act as a fence viewer, in compliance with section 8 of the Act. (765 ILCS 130/8 (West 1992).) The two fence viewers read the Act, walked the length of the fences in question, and spoke with both the parties as well as farmers in the area. The fence viewers' decision was typed,

reviewed, amended, and then signed and mailed to the parties. The fence viewers declared:

"We both conclude that the present fence, with the brush removed and only a very few repairs made, would be suitable for grazing cattle. Since the rightful owner of the Gard property is presently in a nursing home and on public aid, and because her property is not completely fenced in, any new fence would be of no value to her.

It only makes sense to us that if Mr. Wallis wishes to upgrade the fence that he must be allowed to do so but at his own expense."

The fence viewers directed Snyder, however, to remove brush away from the fence to a distance of three feet, and to keep it removed on a yearly basis. Also, the fence viewers declared if Snyder decided to enclose her property for livestock in the future, she would then need to reimburse Wallis for one-half the expenses of repairing and maintaining the fence at issue.

Wallis filed a complaint in the circuit court of Clark County seeking declaratory and injunctive relief. His complaint alleged the decision of the fence viewers was contrary to the requirements of the Act in several respects, and asked the court to allocate a share of maintaining the fence to Gard and Snyder. The circuit court denied the relief sought in Wallis' complaint and affirmed the decision of the fence viewers in all respects. Wallis filed an appeal, but died during the pendency of the appeal. Upon request by the independent executor of his estate, Mary-Ellen Whitling, she has been substituted as the plaintiff in this appeal.

■■ ■ A court of review should not set aside the decision of fence viewers unless the record clearly and unequivocally shows the decision was arbitrary or inequitable. (*Swanson v. Wolstenholm* (1973), 10 Ill. App. 3d 69, 73, 293 N.E.2d 461, 464.) Whitling first contends the agreement between Wallis and Gard to divide maintenance of the fence equally should be enforceable against Snyder as well. Essentially, she is arguing the agreement between Wallis and Gard that each of them would maintain one-half the division fence is a covenant running with the land. In order for a covenant to run with the land, the contracting parties must have intended it at the time of the contracting, the covenant must touch and concern the land, and there must be privity of estate between the party claiming the benefit of the covenant and the party resting under its burden. (*Derby Meadows Utility Co. v. Inter-Continental Real Estate* (1990), 202 Ill. App. 3d 345, 362, 559 N.E.2d 986, 996.) Here, Wallis at no time asserted he and Gard intended their agreement to run with the land. There has never been privity of estate between Wallis and Gard.

They have not had a grantor-grantee, lessor-lessee, or any other relationship which would create privity of estate between them. Their covenant could not run with the land, so the covenant is unenforceable against Snyder.

Moreover, Wallis' agreement with Gard can no longer be enforced even against Gard herself. Throughout these proceedings, Wallis never stated he and Gard agreed on a specific duration of their agreement. We have been unable to locate a case in Illinois which discusses the issue of a real covenant of indefinite duration. However, Professors Cunningham, Stoebuck, and Whitman, in their treatise on the law of property, address the issue of the duration of a real covenant of otherwise indefinite duration:

> "A satisfactory solution is found in a theory suggested by Dean Roscoe Pound: 'It is submitted that the sound course is to hold that when the purpose of the restrictions can no longer be carried out the servitude comes to an end; that the duration of the servitude is determined by its purpose.' He was writing specifically of equitable restrictions, but the theory can be applied equally well to real covenants. The basic mechanism is a judicial inference that the covenanting parties intended the covenant to last only so long as it served their purpose." (R. Cunningham, W. Stoebuck, & D. Whitman, The Law of Property § 8.20, at 483 (2d ed. 1993), quoting R. Pound, *The Progress of the Law, 1918-19, Equity,* 33 Harv. L. Rev. 813, 821 (1920).)

Here, although there were never written terms to the agreement between Wallis and Gard to maintain the fence, we can infer the intent of the parties from the nature of the agreement. Wallis testified at the time he and Gard agreed to evenly split upkeep of their division fence, Gard kept sheep, at least three head of cattle, and a sow with piglets. The intent of the parties was to evenly divide maintenance of the fence as long as that maintenance was beneficial to both parties. However, Gard has not kept livestock on her property for at least 20 years. Further, her property now lacks a fence on its south border, so that even were the division fence repaired by her, she would have to construct additional fence before she could again keep livestock on her property. The agreement between Wallis and Gard is no longer in force because one of the purposes of the agreement—benefit to Gard—no longer exists.

■ Moreover, even if Wallis and Gard's agreement otherwise met the requirements for a perpetual covenant running with the land, the covenant is unenforceable because it was not codified in a written agreement. Unless the evidence is clearly to the contrary, a court will presume a parol agreement to impress property with a servitude

was made with knowledge of the provisions of the statute of frauds, and was therefore intended as license only and not as an easement or other interest in the land itself. (*Petersen v. Corrubia* (1961), 21 Ill. 2d 525, 532, 173 N.E.2d 499, 502-03.) The parties here did not convey an interest in land. Instead the parties merely entered into a contractual agreement. Here, there were no express terms of the duration of the contract. Although a contract containing no provision for its duration is ordinarily terminable at will, such is not the case when a period of duration can fairly be implied from the nature of the contract. The duration of an agreement must be determined from a consideration of the agreement as a whole. (*Carrico v. Delp* (1986), 141 Ill. App. 3d 684, 689, 490 N.E.2d 972, 976.) As was discussed earlier, the purpose of the agreement was to mutually benefit the parties as long as the fence was needed by *both of them* in order to fence in livestock on their property. The duration of their agreement would be as long as the fence was still needed by both parties for this purpose. Gard no longer benefits from the purpose of the agreement, so the agreement has terminated.

■ Whitling next asserts the circuit court erred by affirming the decision of the fence viewers which, she contends, misinterpreted sections 3 and 7 of the Act. Section 3 of the Act declares: "When 2 or more persons have lands adjoining, each of them shall make and maintain *a just proportion* of the division fence between them ***." (Emphasis added.) (765 ILCS 130/3 (West 1992).) Section 7 of the Act declares:

> "If disputes arise between the owners of adjoining lands concerning the proportion of fence to be made or maintained by either of them, such dispute may be settled by any two of the fence viewers of the town or precinct, as the case may be, and in such cases it shall be the duty of the two fence viewers to distinctly mark and define *the proportion* of the fence to be made or maintained by each." (Emphasis added.) (765 ILCS 130/7 (West 1992).)

The primary rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the true intent of the legislature. In determining the legislative intent, a court should first consider the statutory language. Where the statutory language is clear, it will be given effect without resort to other aids for construction. *People ex rel. Baker v. Cowlin* (1992), 154 Ill. 2d 193, 197, 607 N.E.2d 1251, 1253.

■ Whitling argues the terms "proportion" and "just proportion" as used in the Act mean an amount equal to one-half the linear distance of each fence, unless otherwise agreed to by the parties. This argument is without merit. The statute is clear and unambiguous.

There is no language in the Act requiring landowners equally divide the cost of maintaining a fence if they cannot otherwise agree on appropriate proportions. To the contrary, section 3 of the Act states landowners are to be responsible for "a just proportion" of the fence dividing their properties. (765 ILCS 130/3 (West 1992).) The nature of this phrase indicates its intended flexibility so as to be able to consider the circumstances in each individual case.

The legislature has had over 120 years to substitute a fixed proportion for a variable proportion in sections 3 and 7 of the Act by substituting "one-half" in place of "a just proportion." However, the legislature has not done so. This makes sense as well. Allocating the costs of maintaining a fence between adjacent landowners on an equal basis would result in undue hardship in certain cases. For example, a parcel of one acre owned by an individual on a fixed retirement income who merely homesteads on the parcel might be located adjacent to a 1,000-acre parcel owned by a wealthy agribusiness engaged in livestock production. The homesteader should not be required to evenly split the cost of a section of high-tech fence built by the agribusiness to divide its parcel from the homesteader's parcel. The fence viewers were entitled to apportion maintenance of the fence in a manner other than an even division.

■ Whitling next argues the circuit court erred in affirming the decision of the fence viewers because they failed to comply with section 10 of the Act, which mandates:

> "The decision of the fence viewers shall be reduced to writing; shall contain a description of the fence, and of the proportion to be maintained by each, and their decision upon any other point in dispute between the parties, submitted to them as aforesaid ***." (765 ILCS 130/10 (West 1992).)

Whitling contends the written decision of the fence viewers failed to comply with section 10 of the Act because, she contends, their decision did not contain either a description of the fence or the proportion to be maintained by each party.

■ Generally, the use of the word "shall" in a statute indicates a mandatory obligation unless the context indicates otherwise. (*Newkirk v. Bigard* (1985), 109 Ill. 2d 28, 33, 485 N.E.2d 321, 323.) If a statute imposes duties and by express language provides that the omission to perform the duties renders the proceeding void, then courts are bound to construe those provisions as mandatory. In many cases, however, the statute simply provides certain acts shall be done within a particular time and in a particular manner and does not declare their performance is essential to the validity of the proceeding. In these cases, the statute is directory. *Village of Lake Barrington v. Hogan* (1995), 272 Ill. App. 3d 225, 232, 649 N.E.2d 1366, 1373.

■ Here, although section 10 of the Act states the fence viewers "shall" describe the fence involved in the dispute, the fence viewers' written decision does not contain such a description. (765 ILCS 130/10 (West 1992).) This defect does not render the fence viewers' decision void, because section 10 appears directory only. There is no language in section 10 negating the decision of the fence viewers if they fail to adequately describe the fence involved. Moreover, there is no reason to do so, because presumably the parties are well aware of the fence or fences involved in the dispute. This is especially true where, as here, only a single fence is involved and the fence viewers have allocated the maintenance of the entire fence to one party. In such a case, there is no need to carefully delineate the portions of the fence for which each party is responsible. Instead, the fence viewers need only inform the party to be responsible for maintenance of the entire fence of the obligation. Therefore, the fence viewers' decision is not void because of their failure to clearly describe the fence involved in the dispute. Further, as to Whitling's contention the written decision of the fence viewers does not contain the proportion of the fence to be maintained by each party, this contention is without merit. The fence viewers' decision expressly states Wallis is to be responsible for maintaining the entire section of fence.

■ Whitling next asserts the circuit court erred by affirming the fence viewers' decision because their decision relied on improper factors in allocating maintenance of the fence between the parties. From the hearing on Wallis' complaint for declaratory and injunctive relief, the circuit court discerned at least four factors the fence viewers considered in reaching their decision: the benefit each landowner could reasonably expect to derive from the fence, the present condition of the fence and the feasibility of repair, the financial effect of the fence viewers' decision on each landowner, and the rights of the respective landowners to use their land as they desire. Contrary to Whitling's assertion, these are appropriate factors to consider in determining the "just proportion" of the fence each landowner should be responsible for maintaining. Although the statute does not list the criteria to be used, the flexibility of the term "just proportion" indicates the legislature intended fence viewers to consider any factors they believed were appropriate. As long as the decision of the fence viewers is not arbitrary or inequitable, a court of review will affirm their decision.

■ Whitling argues the decision of the fence viewers was arbitrary and inequitable, and so the circuit court's affirmance of their decision was against the manifest weight of evidence. This argument, too, is without merit. Section 9 of the Act mandates the

fence viewers shall examine the premises and hear the allegations of the parties. (765 ILCS 130/9 (West 1992).) Section 18 of the Act grants the fence viewers authority to examine witnesses on any and all questions submitted to them. (765 ILCS 130/18 (West 1992).) This is what the fence viewers did here. They thoroughly examined the fence in person, heard the allegations of the parties in person, and consulted other farmers in the area regarding customs involving the maintenance of a division fence separating adjacent landowners. The fence viewers determined it would be inequitable to require either Gard or Snyder to pay for repair or maintenance of a fence they would not use. However, the fence viewers did require Snyder to remove, and keep removed, brush from along her side of the fence. They also directed Snyder would need to reimburse Wallis for one-half his costs of repairing and maintaining the fence if Snyder decides to make use of the fence in the future. This was fair to Wallis. The decision of the fence viewers was not arbitrary or inequitable, and the circuit court did not err in affirming their decision.

The decision of the fence viewers and the trial court is affirmed.

Affirmed.

McCULLOUGH and GARMAN, JJ., concur.