THE VILLAGE OF LAKE BARRINGTON *et al.*, Plaintiffs-Appellants and Counterdefendants and Cross-Appellees, v. MARY E. HOGAN *et al.*, Defendants-Appellees and Counterplaintiffs and Third-Party Plaintiffs and Cross-Appellants (Cole Taylor Bank, as Trustee, *et al.*, Defendants-Appellees and Cross-Appellants; Lake Barrington Industrial Park Association, Counterplaintiff and Third-Party Plaintiff and Cross-Appellant; Nancy Smith *et al.*, Third-Party Defendants and Cross-Appellees).

Second District    No. 2—94—0839

Opinion filed May 2, 1995.—Rehearing denied June 9, 1995.

William C. Barasha, of Kurnik, Cipolla & Barasha, Ltd., of Arlington Heights, for appellants Village of Lake Barrington and Village of Lake Barrington Special Service Area Number Three.

John M. Mullen, of Libertyville, James P. Bateman, of Barrington, and John E. Norton, of O'Reilly, Cunningham, Norton & Mancini, of Wheaton, for appellees James Bateman and Nancy Smith.

Daniel P. Field, of Waukegan, and Paul Harrison Stacey, of Wheaton, for appellees Mary E. Hogan, Sam Loiacono, and Ruth Loiacono.

JUSTICE THOMAS delivered the opinion of the court:

The plaintiffs, the Village of Lake Barrington and the Village of Lake Barrington Special Service Area Number Three (collectively the Village), filed a three-count amended complaint against the defendants, Mary E. Hogan, Sam Loiacono and Ruth Loiacono. Count I of the Village's amended complaint sought a declaration that the ordinances it adopted creating a special service area were valid. Count II of the amended complaint alleged that the defendants tortiously interfered with the Village's contract with the company that was to provide the bonding for the project. Count III of the amended complaint alleged that the defendants tortiously interfered with the Village's economic advantage. Pursuant to section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (1988)), the defendants brought a two-count counterclaim against the plaintiffs and a third-party complaint against third-party defendants James Bateman and Nancy Smith. The defendants also brought a counterclaim seeking a declaration that the Village ordinances creating the special service area were invalid. The Village appeals from the trial court's summary judgment

order finding that the ordinances creating the special service area were not validly enacted. The Village and Bateman appeal the trial court's order imposing sanctions against them pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137). The defendants appeal the trial court's dismissal of their counterclaims.

The pleadings, exhibits, and affidavits on file reveal that in December 1990 John Reindl was hired by the Village to coordinate the creation and implementation of a special service area in a location known as the Lake Barrington Industrial Park (Park). The Village adopted its first ordinance with respect to the project on July 7, 1992, which established a public hearing date of July 29, 1992. The Village then attempted to satisfy the statutory notice requirements. Notice of the hearing was published in the Daily Herald on July 13, 1992.

According to Reindl's affidavit, he mailed notices to the person or persons in whose names the general taxes for the preceding year had been paid. He based his decision of who should receive notice on information appearing in duplicate tax receipts. He explained that when he sent the notices he was unaware this information was not as comprehensive as the actual tax bills and that the names of some individuals on behalf of whom taxes were also paid were left out. The notices were sent by first-class mail and also by certified mail.

Defendant Ruth Loiacono, one of two persons in whose names the taxes had been paid for a single parcel of land in the special service area, was not mailed a notice. A notice was signed for by her husband, defendant Sam Loiacono. Phyllis Pynsky, Mildred Drasen, and Margaret Malo were also not mailed notices, but they are not parties to this action.

After the public hearing was adjourned on July 29, 1992, defendants Mary Hogan, Sam Loiacono, and Ruth Loiacono filed objections to the service area. However, the total number of objections filed was less than the 51% required by statute to prevent the creation of the special service area, the levy of taxes, and the sale of bonds. Specifically, two of the five registered voters signed objections, and 46 out of 127 owners of record filed objections.

Thereafter, the Village adopted an ordinance establishing the special service area. The area consisted of 100 separate parcels and 127 owners of record. It also adopted an ordinance which provided for the levy of taxes and the sale of bonds in the aggregate amount of $7 million. The Village then entered into an agreement with Bernardi Securities, Inc., for the sale of the bonds.

According to the Village's amended complaint, Village attorney James Bateman had a series of communications with attorney James

Hecht, who represented defendant Mary Hogan. Hecht had attended a Village Board meeting, at which time he had raised certain legal objections to the establishment of the special service area. Bateman had a conversation with Hecht on November 12, 1992, in which Bateman disclosed to Hecht that the bond ordinance would be adopted very soon and that Hecht should conclude his review as soon as possible. On December 3, 1992, Hecht told Bateman in a telephone conversation that he was preparing a suit to enjoin the sale of the bonds. On December 9, 1992, in another telephone conversation, Bateman informed Hecht that his threat of litigation was holding up the bond sale closing, which had been set for December 14, 1992. According to the Village's amended complaint, Hecht's threat of litigation prevented the Village from closing on the bonds on December 14, 1992. On December 18, 1992, Bateman spoke on the telephone once more with Hecht, who was told that his threat of litigation was interfering with the ability of the Village to close on the sale of the bonds, since the Village could not represent to bond counsel that there was no pending or threatened litigation. In that conversation, Hecht denied that he had threatened litigation. Bateman then sent a letter to Hecht on December 21, 1992, to confirm this statement.

On December 22, 1992, Bateman had another telephone conversation with Hecht, in which Hecht refused to confirm his earlier denial that the defendants had threatened or were threatening suit and stated that he "did not like how this matter was going." Hecht's subsequent letter to Bateman of December 22, 1992, recited certain defects in the special service area proceedings.

The sale of the bonds never closed. The Village contends that the closing was prevented by the persistent threat of litigation by Hecht on behalf of defendant Mary Hogan and certain other undisclosed clients of Hecht.

According to the defendants' counterclaim, Hecht advised Bateman sometime prior to December 9, 1992, that a suit would be filed to contest the validity of the ordinances creating the special service area. Thereafter, Bateman met with Village president Nancy Smith, and the two agreed that the defendants should be dissuaded from filing a lawsuit. Notwithstanding the defendants' constitutional rights to challenge the validity of the ordinances, Bateman advised Hecht sometime before December 7, 1992, that if Hecht's clients sought a judicial determination of the validity of the ordinances, the Village would file an action for damages against his clients. At that point, Hecht's clients advised him not to file suit in view of the Village's threat to sue them for $6 million in damages.

Thereafter, Bateman repeatedly attempted to ascertain the identity of Hecht's clients so that he could file suit against them on behalf of the Village. On January 5, 1993, the Village and Bateman carried out their threats and filed suit against the defendants, alleging in essence that the defendants were liable in tort for having considered to seek a judicial determination with respect to the validity of the ordinances.

The Village first argues on appeal that the trial court erred in finding that the Village did not satisfy the statutory notice requirements. The Village contends that it was only required to comply substantially with the notice requirements, while the defendants claim that strict compliance was necessary.

■ Section 5 of the Special Service Area Tax Act (the Act) provides that notice of the hearing regarding the establishment of a special service area shall be given by publication in a newspaper of general circulation in the county and by mailing. (35 ILCS 235/5 (West 1992).) Section 5 further provides:

> "Notice by mailing *shall* be given by depositing said notice in the United States mails *addressed to the person or persons in whose name the general taxes for the last preceding year were paid* on each lot *** within the special service area. *** In the event taxes for the last preceding year were not paid, the notice shall be sent to the person last listed on the tax rolls prior to that year as the owner of said property." (Emphasis added.) 35 ILCS 235/5 (West 1992).

In *Andrews v. County of Madison* (1977), 54 Ill. App. 3d 343, the court had an opportunity to construe the notice requirements of section 5 of the Act. There, the plaintiffs brought an action to enjoin the county from taking any action in furtherance of its ordinance creating a special service area and providing for the financing of services in connection with the area. Among other things, the plaintiffs argued that the county failed to satisfy the notice requirements of section 5. The *Andrews* court held that the county substantially complied with the notice requirements even though some owners did not receive actual mail notice because the county sent some notices to mortgagees without any cross-reference to the actual owners of record.

In *Grais v. City of Chicago* (1992), 151 Ill. 2d 197, our supreme court addressed the notice requirement of section 5 of the Act. There, notice was sent only to owners of commercial property within the special service area and not to owners of residential property. The court noted that the lack of notice was problematic because the statute requires that taxpayers be mailed individual notice before their property can be included within a special service area. However, the

plaintiff in *Grais* did not claim that he did not receive notice. The court found that it could not invalidate the entire special service area based on a lack of notice to some owners. The court further stated that any taxpayer who is eventually taxed may have an individual dispute with the city if notice was not provided to him or to his predecessor-in-interest.

■ Applying *Grais* to the present case, we find that the clear import of the decision is that notice under the statute is not jurisdictional and the lack of notice to some taxpayers within the special service area does not invalidate the entire service area. However, we hold that the reasoning of *Grais* further requires that the Loiacono parcel be excluded from the special service area since Ruth Loiacono did not receive mail notice and she is a party to the instant proceeding. To the extent that *Andrews* is inconsistent with *Grais* and our holding on this issue, we decline to follow *Andrews*.

The Village next argues that the trial court erred in finding that the content of the notice sent by the Village did not satisfy the statutory criteria. The trial court did not specifically mention any particular defect in the notice to support its finding. However, the defendants alleged the following deficiencies in the notice: (1) that in addition to stating that the purpose of the hearing was to consider the special service area, it should have also stated that the hearing would decide whether to establish and fund the special service area; (2) that the notice did not state that interested persons could object to the formation of the area first and then have a further opportunity to object to the levy and issuance of bonds; (3) that the notice failed to advise interested persons that they could file objections regarding any issue appearing in the notice; (4) that it did not mention that the defendants could object to the issuance of bonds; and (5) that it did not state that interested persons would have an opportunity to file an objection *at the hearing*.

■ Initially, we note that to determine whether a statute is mandatory or discretionary, courts look first to the language of the statute as the best indication of legislative intent. (*Pullen v. Mulligan* (1990), 138 Ill. 2d 21, 65; *People ex rel. Village of Grayslake v.' Village of Round Lake Beach* (1993), 242 Ill. App. 3d 750, 756.) If a statute imposes duties and by express language provides that the omission to perform the duties renders the proceeding void, then courts are bound to construe those provisions as mandatory. In most cases, however, the statute simply provides that certain acts shall be done within a particular time or in a particular manner and does not declare that their performance is essential to the validity of the proceeding; in these cases, the statute is directory. *People ex rel. Village of Grayslake*, 242 Ill. App. 3d at 756.

■ Applying the above-mentioned principles, we find that the statutory criteria regarding the content of the notice are directory and not mandatory. The statute does not provide that compliance with every detail of the content-of-notice provisions is essential to the validity of the proceeding. More importantly, we find that the Village complied with the notice requirements of the statute. The first and fourth of the purported deficiencies listed above are belied by the notice itself. Regarding the second alleged deficiency, we note that the requirement suggested by the defendants is not mandated by statute. Thus, we will not require it either since more specificity is not required by the statute. (See *Schwarzbach v. City of Highland Park* (1980), 82 Ill. App. 3d 807.) Lastly, we note that section 4(3) of the Act does not require notice of opportunity to file objections *at the hearing*. Rather, that section states only that the notice provide interested persons an opportunity to file objections to the amount of the tax levy. Section 9 of the Act (35 ILCS 235/9 (West 1992)) does not require a different result. It does not require, as the defendants urge, that the Village ascertain and disclose the owners of record at the public hearing. Rather, its purpose is to provide a date for determining owners of record with respect to objectors' petitions. See 35 ILCS 235/9 (West 1992).

The Village next argues that the trial court erred in finding that counts II and III of its amended complaint failed to state a cause of action. Specifically, the Village contends that the court erred in finding that the defendants' conduct was conditionally privileged, because the privilege only applies to an attorney representing a client's interests. Count II of the amended complaint alleged that the defendants tortiously interfered with the Village's contract with Bernardi Securities, Inc., for the sale of the bonds to finance the improvements to the special service area. Count III alleged that the defendants tortiously interfered with the Village's economic advantage.

A trial court should dismiss a complaint for failure to state a cause of action only if it is clear that no set of facts can be proved which will entitle the plaintiff to recover. (*People ex rel. Daley v. Datacom Systems Corp.* (1991), 146 Ill. 2d 1, 11.) In assessing the sufficiency of the complaint, we must take as true all well-pleaded facts and reasonable inferences drawn from those facts. *Weinberger v. Bell Federal Savings & Loan Association* (1994), 262 Ill. App. 3d 1047, 1049-50.

■ It is well settled that Illinois courts will recognize a privilege in intentional interference with contract cases where the defendant was acting to protect an interest which the law deems to be of equal

or greater value than the plaintiff's contractual rights. (*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 157.) It is axiomatic that acts involving the first amendment right to petition the government for redress of grievances involve an interest protected by the privilege. (*Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 550; *Mannion v. Stallings & Co.* (1990), 204 Ill. App. 3d 179, 189.) Where the conduct of the defendant appears to be privileged from the face of the plaintiff's complaint, the plaintiff is required to plead and prove that the defendant's actions were done without justification. (*HPI Health Care*, 131 Ill. 2d at 156; *Arlington Heights National Bank*, 37 Ill. 2d at 551; *Mannion*, 204 Ill. App. 3d 179.) To state properly a cause of action for intentional interference with contractual rights, a plaintiff must state more than a mere assertion that the defendant's conduct was unjustified; instead, the plaintiff must set forth factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified. (*HPI Health Care*, 131 Ill. 2d at 158.) Furthermore, ill will alone is not enough to establish lack of "justification"; there must be a desire to harm, which is independent of and unrelated to a desire to protect the acting party's rights and which is not reasonably related to the defense of a recognized property or social interest. *Arlington Heights National Bank*, 37 Ill. 2d at 551.

■ Examining counts II and III of the Village's amended complaint, it is clear that the counts were based on the defendants' actions of hiring an attorney to protect their property rights with respect to the imposition of the special service area. The complaint alleges that the defendants' attorney raised questions with respect to the validity of the ordinances and threatened litigation. This simply indicates that the defendants were exercising their first amendment rights to petition government for a redress of grievances. They were also attempting to protect their property interests. We find that under the circumstances of the case the defendants enjoyed a conditional privilege. The Village's insistence that only the defendants' attorney's conduct was privileged and not the conduct of the defendants is wholly without merit and is an exercise in faulty syllogism. Moreover, we find that the plaintiff failed to allege facts indicating that the defendants' conduct was unjustified. Additionally, we note that given the circumstances it is clear that the plaintiffs could prove no set of facts which would entitle them to recover. Accordingly, the trial court properly dismissed with prejudice counts II and III of the Village's amended complaint.

Next, the Village and attorney Bateman argue that the trial court erroneously imposed sanctions against them pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137). They contend that the tort claims in counts II and III of the Village's amended complaint were filed in good faith and not for an improper purpose. We disagree.

■ Supreme Court Rule 137 provides in relevant part:

"The signature of an attorney or party [on a pleading] constitutes a certificate by him that he has read the pleading ***; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is *** warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading *** is signed in violation of this rule, the court *** may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading ***." (134 Ill. 2d R. 137.)

The purpose of Rule 137 is to penalize litigants who plead frivolous or false matters or bring suit without any basis in law. (*In re Marriage of Sykes* (1992), 231 Ill. App. 3d 940, 946.) The test to be utilized in determining whether a violation has occurred is an objective standard of what was reasonable under the circumstances at the time the assertions were made. (*Lewy v. Koeckritz International, Inc.* (1991), 211 Ill. App. 3d 330, 334.) A trial court's decision to impose sanctions under the rule will not be disturbed absent an abuse of discretion, and an abuse of discretion will be found only where a trial court has made a decision no reasonable person could make. *In re Marriage of Sykes* (1992), 231 Ill. App. 3d 940, 946.

■ Here, the trial court stated in its written sanction order that counts II and III were without any reasonable basis in law and did not represent a good-faith argument for the extension or modification of existing law. The court further found that the claims were not filed for any legitimate purpose other than to intimidate the defendants into withdrawing their objections to the special service area. We find that the court's conclusions were supported by the facts of this case. As stated previously, the Village's argument that the conditional privilege only applied to attorneys was without merit and did not represent a good-faith argument for the modification of existing law. Accordingly, we are unable to say that no reasonable trial judge would have imposed sanctions in this case.

We will now address the defendants' cross-appeal. Count I of the defendants' amended counterclaim alleged that the Village, attorney Bateman, and Village president Nancy Smith violated section 1983 of the Federal Civil Rights Act, in that they attempted to deter the defendants from seeking a judicial determination of the validity of the ordinances. The defendants first argue that the trial court erred in dismissing count I of their amended counterclaim on the basis that it was barred by the Noerr-Pennington doctrine. The defendants further argue that even if the Noerr-Pennington doctrine is initially applicable, the Village's conduct in filing its action for tort damages fell under the "sham" exception to the doctrine and was thus actionable pursuant to section 1983.

■ The essence of the Noerr-Pennington doctrine is that parties who petition the government for governmental action favorable to themselves cannot be sued under the Sherman Anti-trust Act, even though their actions are motivated by anti-competitive intent. (*United Mine Workers of America v. Pennington* (1965), 381 U.S. 657, 670, 14 L. Ed. 2d 626, 636, 85 S. Ct. 1585, 1593.) This doctrine has been extended to local governmental bodies to immunize them from suit. (*Monarch Entertainment Bureau, Inc. v. New Jersey Highway Authority* (D.N.J. 1989), 715 F. Supp. 1290, 1301-03.) Courts, however, have carved out an exception to the doctrine for "sham" litigation. (*Bill Johnson's Restaurants, Inc. v. NLRB* (1983), 461 U.S. 731, 740, 76 L. Ed. 2d 277, 287, 103 S. Ct. 2161, 2168; *California Motor Transport Co. v. Trucking Unlimited* (1972), 404 U.S. 508, 513, 30 L. Ed. 2d 642, 648, 92 S. Ct. 609, 613; *Harrison v. Springdale Water & Sewer Comm'n* (8th Cir. 1986), 780 F.2d 1422, 1428.) To constitute "sham" litigation, a lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.* (1993), 508 U.S. 49, 60-61, 123 L. Ed. 2d 611, 624, 113 S. Ct. 1920, 1928.

■ Here, the Village urges that the sham exception does not apply because this case does not involve any massive activities as in *California Motor Transport Co.* or repetitive lawsuits carrying the hallmark of insubstantial claims as in *Otter Tail Power Co. v. United States* (1973), 410 U.S. 366, 380, 35 L. Ed. 2d 359, 369, 93 S. Ct. 1022, 1031. The Village also contends the exception is not applicable because the defendants were not eventually denied access to the courts.

The Village's arguments are erroneous. A single baseless suit is sufficient to invoke the sham exception. (*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.* (9th Cir. 1982), 690 F.2d 1240, 1254-57; *USS-Posco Industries v. Contra Costa County Building &*

*Construction Trades Council* (9th Cir. 1994), 31 F.3d 800, 810-11.) Furthermore, a litigant need not prove that he was actually barred from access to the courts as a prerequisite to maintaining an action with the aid of the sham exception to the Noerr-Pennington doctrine. (*Clipper Exxpress*, 690 F.2d at 1257-59; *Harrison*, 780 F.2d at 1428.) Finally, a threat of litigation can chill the constitutional right of access to the courts even if the threat was not successful. *Silver v. Cormier* (10th Cir. 1976), 529 F.2d 161, 163.

The Village also argues that the sham exception should not apply because the declaratory judgment action was not a sham and the tort claims were not clearly barred by the conditional privilege. The Village's arguments must be rejected. It cites no authority for the proposition that it could file sham litigation as long as one of several counts in the complaint had merit. Regarding the issue of whether the tort claims were clearly barred by the conditional privilege, we have already touched on that contention with our finding that the trial court correctly imposed sanctions for the filing of a baseless lawsuit. Taking the well-pleaded facts of the defendants' amended counterclaim as true, we find a trier of fact could conclude that the defendants were entitled to recover damages. Accordingly, count I of the defendants' amended counterclaim should not have been dismissed.

Third-party defendants Bateman and Smith contend that they enjoyed qualified immunity from suit as public officials.

■ Governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutes or constitutional rights of which a reasonable person would have known. (*Harlow v. Fitzgerald* (1982), 457 U.S. 800, 815, 73 L. Ed. 2d 396, 408-09, 102 S. Ct. 2727, 2736-37.) This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of preexisting law the unlawfulness must be apparent. (*Anderson v. Creighton* (1987), 483 U.S. 635, 640, 97 L. Ed. 2d 523, 531, 107 S. Ct. 3034, 3039.) In essence, the immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs* (1986), 475 U.S. 335, 341, 89 L. Ed. 2d 271, 278, 106 S. Ct. 1092, 1096.

Applying these standards, we find that a reasonable village president would have relied on the advice of the village attorney that the course of conduct the Village was pursuing was proper and legal, and thus we find immunity applies to Smith. However, we find that in light of the preexisting law the immunity does not extend to attorney

Bateman. Thus, we conclude that the trial court properly dismissed count I of the defendants' counterclaim as it pertained to Smith, but erred in dismissing that claim as it pertained to Bateman.

The defendants next argue that the court erred in dismissing count II of their amended counterclaim. Count II alleged that the Village violated principles of equal protection by intentionally gerrymandering the special service area to exclude owners and electors who were opposed to the project. The defendants further argue that the special service area was not needed and did not rationally relate to a legitimate purpose.

In support of its claim, the defendants presented the affidavit of Bruce Walterman. Walterman's affidavit revealed that he expressed his opposition to the special service area and thereafter his property was excluded. The defendants claim that he was excluded because he voiced his opposition and that this was improper.

We find that the trial court properly dismissed the defendants' claim. Section 6 of the Special Service Area Tax Act specifically provides that a municipality may delete property from the special service area as long as the area remains contiguous after the deletion. (35 ILCS 235/6 (West 1992).) Here, the defendants do not argue that the area after the deletion of Walterman's property was not contiguous. Moreover, the Village explained that the special service area was designed to benefit the industrial park. The Village noted that Walterman's property was not strictly commercial since he lived on the property, and it was excluded for that reason. Regarding the defendants' claim that the special service area was not necessary or legitimate, we note that the evidence that the improvements would enhance the ability to fight fires within the district was unrebutted. Under these facts, we find that there was no issue of material fact with regard to a possible violation of the equal protection clause. Accordingly, we find that the trial court properly dismissed the plaintiffs' equal protection claim.

For the foregoing reasons, we reverse the trial court's order declaring the entire special service area to be invalid. However, we order that the Loiacono parcel be excluded for lack of notice. We affirm the trial court's order dismissing the Village's tort claims, counts II and III of its amended complaint. We also affirm the trial court's order of Rule 137 sanctions against the Village and attorney Bateman. Regarding the defendants' cross-appeal, we reverse the trial court's order dismissing count I of the defendants' counterclaim and third-party complaint and remand the cause for further proceedings, but affirm the order with respect to the dismissal of third-party defendant Smith. We also affirm the trial court's order dismissing count II of the defendants' amended counterclaim.

The judgment of the circuit court of Lake County is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

RATHJE and HUTCHINSON, JJ., concur.